# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-01868-SCT

*ANDERSON CURRY a/k/a ANDERSON CURRY, II*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/2004 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHNNIE E. WALLS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/17/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND DICKINSON, JJ.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Anderson Curry was indicted by a Bolivar County grand jury for burglary of a dwelling, kidnaping, and aggravated assault. A total of four jury trials were conducted because the jury was unable to come to a unanimous verdict in the first three. At the fourth trial, Curry was acquitted on the burglary and kidnaping counts, but found guilty on the charge of aggravated assault. He was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections.

**FACTS**

¶2.     Around 11:30 p.m. on a rainy December evening in 2001, Stephanie Cummins returned to her home after visiting with her fiancé at his residence. As she entered her apartment, a man grabbed her from behind and placed a knife to her neck, using a towel to keep her from screaming, and duct tape in an effort to restrain her. The assailant, later identified as Anderson Curry, stabbed her an estimated 30 times in the back and flank area of her body. Cummins was severely injured from this attack, and there were blood stains on the couch, table, floors, and walls.

¶3.     After the attack, Cummins told Curry she was thirsty and Curry took a bottled fruit drink and poured some of it into her mouth. When he left the room, she managed to get up and run out of the apartment to a friend's home. She was then transported to the hospital in very serious condition.

¶4.     A few days after the attack, while she was still medicated, Cummins talked with Investigator Charles Bingham and gave a vague description of the assailant as between five-ten and six feet tall and slim. At trial, Cummins testified that she believed the attacker was a tall black male who wore some kind of military camouflage jacket with a hood, wore dark baggy pants with shiny tennis shoes, and had two diamond stud earrings pinned on his white ribbed t-shirt near his belly button. She further testified that she had never seen Curry before.

¶5.     When presented with a voice tape, Cummins was able to pick out Curry based on his voice. She also pointed to Curry's image in a photo lineup, but was less than certain as to whether he was her assailant. Subsequently a warrant was issued to search Curry's house,

2

where the police found clothing, a knife, shoes and other things that the perpetrator had allegedly worn or used during the attack on Cummins. Subsequent to the search, Curry was arrested.

¶6. At trial six witnesses testified in support of Curry's alibi. Ade Barfield testified that on the day of the attack, around 10:30 p.m. or 11:00 p.m., she and Curry went to the residence of Ketrick and Keir Haywood, where they stayed until 3:00 a.m. Barfield further testified that Curry was there the whole time. Keir Haywood, Devonna Hutton, Tervarius Montgomery, Ketrick Haywood, and Anwar Fletcher also testified they were present at the Haywood's residence and confirmed Curry's story that he was there around the same time Cummins was attacked.

¶7. After three jury trials that each resulted in a hung jury, a fourth jury convicted Curry for aggravated assault, but not for burglary of a dwelling or kidnaping. The trial court denied Curry's motion for a judgment notwithstanding the verdict and/or a new trial. On appeal, Curry raises three issues: denial of his motions related to the DNA report; prosecutorial misconduct during closing argument; and denial of J.N.O.V. Finding no reversible error, we affirm.

ANALYSIS

## I. MOTIONS REGARDING DNA REPORT

¶8. The standard of review for a trial court's ruling on a discovery violation is abuse of discretion. *Montgomery v. State,* 891 So. 2d 179, 182 (Miss. 2004). Further, this Court has stated not all failures to disclose exculpatory evidence constitute reversible error. *Carr v. State,* 873 So. 2d 991, 999-1000 (Miss. 2004). The question to be asked regarding a

3

discovery violation is whether there is a reasonable probability that the verdict would have been different but for the governmental evidentiary suppression which undermines confidence in the outcome of the trial. *Stephens v. State,* 911 So. 2d 424, 440 (Miss. 2005) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) .

¶9.     Curry argues the State's failure to disclose the September 18, 2003,[1] DNA report until the first day of the fourth trial on June 7, 2004, was prejudicial.   He asserts that the trial judge's denial of his motions for a continuance and/or a mistrial, was an abuse of discretion. Specifically, Curry contends the State violated Rule 9.04[2] of the Uniform Circuit and County Court Rules, and this violation deprived him of a valuable defense.   The rule states in relevant part:

> A.  .  .  .  the prosecution must disclose to each defendant or to defendant's attorney . . . the following [evidence] which is in possession, custody, or control of the State . . . the existence of which is known or by exercise of due diligence may become known to the prosecution:
> . . .
> 4.     Any reports, statements, or opinions of experts, written, recorded or otherwise preserved, made in connection with the particular case.
> . . .
> 6.  Any exculpatory material concerning the defendant.
> . . .
> E.   Both the state and the defendant have a duty to timely supplement discovery. If, subsequent to compliance with these rules or orders pursuant thereto, a party

---

[1]After the second trial, the State sent the knife and camouflage jacket found in Curry's home to be retested for DNA by Reliagene Technologies.   The third trial occurred before the results were complete.

[2] The law pertaining to discovery violations espoused in *Box v. State,* 437 So. 2d 19, 23-26 (Miss. 1983), is now reflected in U.C.C.C.R. 9.04.  *See Kolberg v. State,* 829 So. 2d 29, 53 (Miss. 2002).

4

discovers additional material or information which is subject to disclosure, that party shall promptly notify the other party or the other party's attorney of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.

. . .

I. If at anytime prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such a party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such order as it deems just under the circumstances.

U.C.C.C.R. 9.04. Curry argues the DNA report was exculpatory because it indicated the blood found on the knife recovered from Curry's residence was his, not Cummins's.

¶10. The trial judge, in accordance with the discretion granted him in U.C.C.C.R. 9.04, denied Curry's motions because the Reliagene report contained no new information, because Curry already possessed the exact same information from the Mississippi Crime Lab. The evidence was reanalyzed by Reliagene because the prosecution hoped for a more detailed analysis. However, that did not happen. According to Curry, had he possessed the Reliagene report he would have called the Reliagene analyst to the stand. He was not interested in calling the Mississippi Crime Lab analyst, preferring to call Reliagene because it is an private entity, separate from the State of Mississippi. Since the information in the report was duplicative, we decline to find reversible error on this issue. We do, however, caution prosecutors that when they choose not to disclose such evidence, they do so at their own peril. The final determination as to what constitutes exculpatory evidence is made by the court, not the prosecutor. In a situation such as this, there is no good reason why the new report was not given to the defendant, pursuant to Rule 9.04 E.

5

¶11. Curry's attorney questioned Officer Bingham about the Mississippi Crime Lab and Reliagene test results, and the jury heard Bingham say the tests revealed that the knife found at Curry's residence did not have Cummins blood on it. Even though the Reliagene report itself was not admitted into evidence, the substance of its conclusion was before the jury. Curry failed to show he was prejudiced by not possessing the Reliagene report until the first day of the fourth trial, and the trial judge did not abuse his discretion by denying Curry's motion for a new trial and motion for a continuance.

¶12. In *Brady v. Maryland,* 373 So. 2d 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court said "[w]e now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is *material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution". *Id.* at 87 (emphasis added). Curry did make a discovery request to the State for all reports, but the Reliagene evidence was immaterial because Curry already possessed precisely the same information. Therefore, the *Brady* rule has not been violated in this case. We find Curry's first assignment of error without merit.

## II.    ALLEGED PROSECUTORIAL MISCONDUCT

¶13. The standard of review that applies to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created. *Sheppard v. State,* 777 So. 2d 659, 661 (Miss. 2000). When making

this determination, the statement should be viewed in context, taking into consideration the circumstances of the case. *Haggerty v. Foster,* 838 So. 2d 948, 962 (Miss. 2002). This Court must also be mindful of the fact that the trial court is in the best position to determine whether irreparable harm resulted from the allegedly improper statement. *Alpha Gulf Coast, Inc. v. Jackson,* 801 So. 2d 709, 727 (Miss. 2001).

¶14.     Curry finds error in the following statement made by the prosecutor in closing:

> And Mr. Walls said to you that *Ms. Cummins's identification, that doesn't have to be a possibility but it has to be beyond a reasonable doubt. And I submit to you, ladies and gentlemen, that that's not so.* We have to prove to you --
> BY MR. WALLS: Your Honor, I object.
> BY MS. MITCHELL: -- *The entire case beyond a reasonable doubt.*
> BY THE COURT: Overruled
> BY MR. WALLS: Your honor, I want to be heard. I mean --
> BY THE COURT: Stop the time.
> BY MR. WALLS: You gave the jury an instruction that says that identification has to be beyond a reasonable doubt. And she's telling the jury --
> BY THE COURT: You've made -- you've noted for the record, Mr. Walls.
> BY MR. WALLS: I move for a mistrial.
> BY THE COURT: Overruled.

Curry says this statement was in clear contradiction of jury instruction D-7, which states:

> As with each element of the crimes charged, the State has the burden of proving identity beyond a reasonable doubt, and before you may convict Anderson Curry you must be satisfied beyond a reasonable doubt of the accuracy of the identification of Anderson Curry. If, after considering all the evidence concerning the crimes charged and the identification of Anderson Curry by Stephanie Cummins as the person who committed the crimes charged, you are not convinced beyond a reasonable doubt that he is the person who committed the crimes charged, then you must find him not guilty of the crimes charged.

Curry points out that the prosecution was present through the instruction conference and therefore should have known that the statement made in closing was legally incorrect. Further,

7

he argues that his case was prejudiced by this comment because it caused the jury to be confused, leading to an illogical verdict. Curry also says the prejudice to his case was compounded by the fact that identification is a pivotal issue in this case, especially considering there were three hung juries before this one.

¶15.    The State counters by arguing that the statement in closing was a correct statement of law; specifically, that the State had to prove all the elements of the crime[3] beyond a reasonable doubt, as shown by the prosecutor's very next sentence, to which Curry objected. In addition, the State points out that the jury had written and oral instructions from the court explaining that counsel's argument in closing should not be weighed as evidence. The State argues that the judge's conclusion that the statement was not error, and this Court should affirm.

¶16.    Although the prosecutor's statement was inartfully worded, it was not reversible error. It appears that either he simply mis-spoke, or that he meant to say Cummins's identification of Curry did not have to be separately proven, beyond a reasonable doubt. The D-7 instruction is broader because it instructs the jury that "[i]f, after examining *all of the testimony and the evidence,* you have a reasonable doubt that Anderson Curry was the person who committed the crimes charged, then you must find Anderson Curry not guilty of the crimes charged." This includes, but is not limited to, Cummins's testimony. Hence, the prosecutor's argument was not error, especially considering the wide latitude given to attorneys in their closing

---

[3] We are mindful that the prosecutor actually said the State had "to prove to you the entire *case* beyond a reasonable doubt" but we see this as a distinction without a difference, in the context it was used.

arguments. *Netherland v. State,* 909 So. 2d 716, 718 (Miss. 2005). We note that Curry's attorney clearly addressed this issue in his closing statement, saying ". . . [Cummins] never said, 'That is the man.' She said, 'That could be a possibility.' Possibility doesn't mean beyond a reasonable doubt, ladies and gentlemen." Therefore, even if the prosecutor's statement was incorrect, the jury was fully informed of the requirement regarding identification.

¶17. Curry's argument that the prosecutor's statement confused the jury is without also merit because jury instruction D-7 clearly laid out the burden of proof for identification in this case, and the law presumes the jury is competent and follows the instructions they are given. *Shoemaker v. State,* 502 So.2d 1193, 1195 (Miss.1987). Therefore, this issue is without merit.

### III. DENIAL OF JUDGMENT NOTWITHSTANDING THE VERDICT

¶18. The standard of review for the trial court's denial of a motion for judgment notwithstanding the verdict is sufficiency of the evidence. *Bush v. State,* 895 So. 2d 836, 842-45 (Miss. 2005). With regard to the sufficiency of the evidence, this Court must ask whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* The proper remedy for a verdict based on insufficient evidence is for this Court to reverse and render. *Id.*

¶19. Curry claims that because the crimes of burglary, kidnaping, and aggravated assault in this case are so intricately intertwined with the identity of the same perpetrator, the jury's

9

finding that Curry was not guilty of burglary and kidnaping, while finding him guilty of aggravated assault, is illogical and inconsistent. Thus, Curry argues, the trial court erred by denying his motion for J.N.O.V. Citing **Holloman v. State,** 656 So. 2d 1134 (Miss. 1995), and **United States v. Powell**, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), Curry suggests this Court can reverse and render if the verdicts are illogical and contradictory, without regard to additional evidence. The State argues that the jury verdict should be affirmed because there is sufficient evidence in the record to support it. We agree with the State.

¶20. The illogical and inconsistent argument is largely resolved by **Powell,** 469 U.S. 57, in which the United States Supreme Court said:

> inconsistent verdicts . . . should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause.
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.
>
> . . . there is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled. Respondent is given the benefit of her acquittal on the counts on which she was acquitted, and it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted.

10

469 U.S. at 65, 69 (citations omitted). See also ***Wooten v. State***, 513 So. 2d 1251 (Miss. 1987). This Court has adopted the rule that review of the sufficiency of the evidence is adequate protection from jury error or irrationality. ***Holloman v. State,*** 656 So. 2d 1134, 1141 (Miss. 1995). Because reviewing the sufficiency of the evidence provides enough protection against an arbitrary verdict, we need not address specific legal issues pertaining to the interplay of burglary, kidnaping, and aggravated assault in this case. Suffice it to say that certain elements necessary to prove the crime of burglary, or the crime of kidnaping, are clearly different than those necessary to prove the crime of aggravated assault.

¶21. The most probative evidence of Curry's guilt was the testimony that Curry's fingerprints were found on the juice bottle at the scene of the crime. This Court has said "[w]hile fingerprint evidence alone . . . will not suffice to support a conviction, fingerprint evidence, coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime, will." ***Wooten v. State***, 513 So. 2d 1251, 1252 (Miss. 1987). Clearly there are circumstances in this case that logically exclude the hypothesis that the print was impressed at another time. First, Cummins testified that she asked Curry for a drink of juice she had just purchased from the store and he poured it into her mouth. Curry's fingerprint was the only discernable print found on that juice bottle. Second, Cummins said she had not seen Curry before. Therefore, if Curry did not in fact commit the crime it is hard to imagine a likely scenario that would explain why his prints would be the only discernable prints on the juice bottle in Cummins's apartment. When

11

looking at these circumstances together, the evidence is sufficient to sustain the verdict under the *Wooten* standard.

¶22. The record contains the following additional evidence probative of Curry's guilt: (1) after conducting a search of Curry's residence, the police found clothes, a knife, shoes and other things that the perpetrator had allegedly worn or used during the attack; (2) when presented with a voice tape, Cummins was able to identify Curry; and (3) when presented with a photo lineup, albeit without certainty, Cummins pointed only to Curry's picture.

¶23. Based on the fingerprint evidence, and the additional evidence, we hold that a rational juror could have found Curry guilty of aggravated assault beyond a reasonable doubt. Curry did provide testimony of an alibi, but the jury must have found it unpersuasive. Determining the credibility of witness testimony is squarely within the province of the fact-finder. *Groseclose v. State,* 440 So. 2d 297, 300-01 (Miss. 1983). Therefore, Curry's final assignment of error is without merit.

## CONCLUSION

¶24. We conclude that Curry's arguments are without merit, and we affirm the judgment and sentence of the Bolivar County Circuit Court.

¶25. **CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IMPOSED IN THIS CAUSE SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**SMITH, C.J., WALLER, P. J., DIAZ, EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., NOT PARTICIPATING**.