BARNES, J., for the Court:
 

 ¶ 1. Brenda Liddell was convicted in the Circuit Court of Tunica County of selling cocaine. She was sentenced to three years, with the sentence to run consecutively to a previously imposed sentence,
 
 [1]
 
 in the custody of the Mississippi Department of Corrections (MDOC)'. On appeal, Liddell raises three issues, contending: (1) introduction of improper testimony from the confidential informant (C.I.) about prior drug transactions with Liddell, (2) ineffective assistance of counsel, and (3) inadequate weight and sufficiency of the evidence. We find no error and affirm.
 

 STATEMENT OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In December 2006, Mississippi Bureau of Narcotics (MBN) Agent Louis Hawkins, MBN Agent Maeena Cody, and a C.I., set up an undercover drug buy at Brenda Liddell’s trailer at 1002 Clark Cove near Tunica, Mississippi. The C.I. stated the area is a known drug area. He had been to “the Cove” numerous times in the past to purchase narcotics for himself.
 

 ¶ 3. The individuals met at a pre-buy location, where the C.I. was outfitted with a hidden camera and an audio recorder and given $150 in state funds to purchase the narcotics. The MBN agents thoroughly searched his body and vehicle for drugs to ensure he had no drugs of his own before he performed the buy. Having set up the purchase with Liddell the night before, the C.I. drove to Liddell’s trailer to purchase crack cocaine. The MBN agents established a surveillance position nearby, where they could hear what transpired during the buy from the relay of the audio
 
 *528
 
 recorder. The C.I. pulled up to the trailer, and Liddell was at the door. An unidentified individual was just leaving the residence. The C.I. entered the trailer and talked to Liddell, telling her he wanted to purchase $150 worth of crack cocaine. He put the money on the kitchen counter, and she told him to go outside; so the C.I. went to his vehicle and waited. The C.I. later explained that usually Liddell did not personally accept the money or hand over the narcotics; the “runner” did. A few moments later, Liddell and Catherine “Doll” Bogan came to the trailer’s door, and Bogan threw a little plastic container into the front yard for Liddell. The C.I. retrieved the container, checked its contents, and went up to the door of the trailer, asking Liddell if she had any pain pills or ecstasy for future buys. She stated that she did not deal with ecstasy, but she could get him as many Xanax pills as he wanted at two dollars per pill. After making the cocaine purchase, the C.I. drove to the post-buy location, where he turned over the container of crack cocaine, which he had just purchased, to the MBN agents.
 

 ¶ 4. Liddell was indicted for sale of a controlled substance pursuant to Mississippi Code Annotated section 41-29-139(a)(l) (Rev.2005). At trial, after the State’s opening statement in which the prosecutor stated that the C.I. had bought drugs from Liddell numerous times, the defense requested the trial judge instruct the C.I. not to refer to these other buys from Liddell, as it would unduly prejudice her. The State countered that it sought to introduce probative testimony which would be admissible under Mississippi Rule of Evidence 404(b) to show there was a “common plan” or a particular way that Liddell conducted her drug sales. The trial judge accepted the State’s argument and asked counsel to address whether the probative value of this testimony outweighed its prejudicial effect. After hearing their arguments, the trial judge concluded it did. The judge then requested the parties draft a proposed limiting instruction. The State offered the proposed instruction, which stated that the C.I.’s testimony on other drug buys should not be considered proof of guilt. The defense entered a continuing objection to the testimony.
 

 ¶ 5. At trial, Agent Hawkins testified for the State, during which the audio and video recordings of the drug buy were admitted into evidence, as well as the crack cocaine and its container. Agent Hawkins was familiar with Liddell’s voice and confirmed that she was the person who was speaking on the audio recording during the drug purchase, and in fact, the C.I. called Liddell by name on the recording. Agent Hawkins stated that the C.I. was paid for the covert drug buy; he was not “working off’ any charges, and the C.I. had been used in about ten cases. Agent Hawkins also confirmed that the C.I. had stated he bought some “bad dope” from Liddell in the past.
 

 ¶ 6. Over the defense’s objection, the C.I. testified that he had bought drugs on previous occasions at Liddell’s residence for his personal consumption. He explained how she usually never took the money or gave the drugs by hand; instead, she had a runner do it. The C.I. stated that it was very unusual that Liddell came to the front door. The State played the audio and video recording of the transaction with the defense requesting the entire recording, not just the relevant portions, be played. After the C.I.’s examination by both the State and the defense, the court gave the limiting instruction.
 

 ¶ 7. Finally, Gary Fernandez, a drug analyst for the Mississippi Crime Laboratory, took the stand for the State. After being qualified as an expert in forensic
 
 *529
 
 science, Fernandez testified that the substance found in the container was 1.8 grams of “base form,” or crack cocaine.
 

 ¶ 8. The defense’s only witness, Bogan, testified that she often spent the night at Liddell’s home, as did other individuals. Bogan stated she had seen the C.I. several times in Clark Cove. While she admitted she was incarcerated at the time of trial for another charge, she stated she was not charged in this case and denied that she was involved in any exchange of money for a drug purchase that day. Also, while she did not remember the day at issue, Bogan claims neither she nor Liddell threw the narcotics to the C.I. from the trailer. Bo-gan also maintained that she would not lie for her friend, Liddell; however, she admitted that they had smoked drugs together, and she is a recovering crack addict. She also denied that she was Liddell’s “runner” or that she and Liddell had ever sold drugs in Clark Cove.
 

 ¶ 9. However, on cross-examination, the State impeached Bogan’s testimony, as she is currently serving time for selling drugs at 1002 Clark Cove. However, Bogan maintained regarding that charge that she did not “know what was in the package ... on the deep freeze,” except she knew it was not cocaine. Then, Bogan confusingly explained she “took the charge because [she] did it.” Bogan also denied that Clark Cove is a known drug area.
 

 ¶ 10. The jury deliberated briefly before finding Liddell guilty as charged. The trial judge sentenced her to three years in the custody of the MDOC, with the sentence to run consecutively to her prior sentence in another drug sale case. Liddell filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, which the trial judge denied. Liddell timely appeals.
 
 [2]
 

 ANALYSIS OF THE ISSUES
 

 I. Testimony of the C.I. and Liddell’s Prior Drug Transactions
 

 ¶ 11. Liddell argues that the trial court erred in allowing, pursuant to the exceptions listed in Rule 404(b), the C.I. to testify about prior drug purchases from her. She claims that she was unfairly prejudiced. Furthermore, even if the admission were proper under Rule 404(b), Liddell claims the trial judge erroneously failed to make an on-the-record finding, pursuant to Rule 403 of the Mississippi Rules of Evidence, of whether the probative value of the testimony outweighed its prejudicial value. Finally, Liddell states that the limiting instruction offered to the jury after the C.I.’s testimony was merely a “legal fiction,” and it was useless in preventing prejudice.
 

 ¶ 12. The standard of review for the admission or exclusion of evidence is an abuse of discretion.
 
 Williams v. State,
 
 991 So.2d 593, 597 (¶ 8) (Miss.2008) (citing
 
 Brown v. State,
 
 969 So.2d 855, 860 (¶ 13) (Miss.2007)). “A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not
 
 *530
 
 reverse this ruling.”
 
 Id.
 
 (quoting
 
 Shaw v. State,
 
 915 So.2d 442, 445 (¶ 8) (Miss.2005)).
 

 ¶ 13. Mississippi Rule of Evidence 404(b) provides that “[ejvidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” We note this list of “other purposes” in the rule is illustrative only, and the Mississippi Supreme Court has continued to expand the circumstances under which “other bad acts” evidence is admissible. Encyclopedia of Mississippi Law § 34:64 (2001). If other crimes or bad acts are admissible under Rule 404(b), they must also be admissible under Rule 403, where “the risk of undue prejudice must not substantially outweigh its probative value.”
 
 Ballenger v. State,
 
 667 So.2d 1242, 1257 (Miss.1995) (citing
 
 Duplantis v. State,
 
 644 So.2d 1235, 1246 (Miss.1994)). This balancing test is left to the trial court’s broad discretion.
 
 Sykes v. State,
 
 749 So.2d 239, 245 (¶ 24) (Miss.Ct.App.1999). Finally, the burden is upon the trial counsel to request a limiting instruction be given to the jury, restricting the evidence to its proper scope, when evidence is admitted that is admissible for one purpose but not for another.
 
 Brown v. State,
 
 890 So.2d 901, 913 (¶ 36) (Miss. 2004) (quoting M.R.E. 105).
 

 ¶ 14. In the case at bar, we first note that the specific issues Liddell raises on appeal regarding this testimony were not raised before the trial court. The right to raise these issues before the appellate court is thus waived.
 
 Walker v. State,
 
 671 So.2d 581, 587 (Miss.1995). Waiver notwithstanding, we also find the issues without merit.
 

 A. Rule b0Jp(b)
 

 ¶ 15. In the instant case, the C.I. specifically testified, during the State’s case-in-chief, that he had been to Clark Cove before to buy drugs. He stated Lid-dell normally would never take the “money or give [the] drugs by hand. You had to set the money on the counter, and she’d usually give it to a runner ... to give to you .... [s]o she wouldn’t get caught....” The C.I. related that this is how she operated during the instant transaction as well, and the video confirmed it. However, he stated Liddell usually never comes to the door of the trailer, but this time she did, and she spoke with the C.I. On cross-examination, the defense elicited from the C.I. that he would “run over [to Brenda’s] six, seven, eight times a day to buy dope from her every day for months.”
 

 ¶ 16. We find no error with the admission of this testimony pursuant to Rule 404(b). As the State notes, while the prosecutor argued for admission under a “common plan” exception, it is clear from the transcript that the prosecutor was offering the evidence to prove that Liddell had a
 
 modus operandi,
 
 or a certain way, of conducting business; and this evidence could be offered to prove her identity: that is, she was in fact the person who had sold the C.I. drugs. We do not find, from the context of the transcript, that the prosecutor, in using the term “common plan,” was attempting to prove a “conspiracy” between Liddell and the C.I., as Liddell contends. The evidence was admitted to show that Liddell purposefully and regularly took the aforementioned precautions when selling drugs in an attempt to prevent criminal liability. The C.I. testified about his prior dealings with Liddell to show that Liddell had conducted this transaction in the same way: she would not take the money in her hand, and she would have
 
 *531
 
 someone else — “a runner” — deliver the drugs to the purchaser.
 

 ¶ 17. Liddell contends that the prosecutor did not lay the proper predicate for the evidence to be considered under Rule 404(b), as required in
 
 Edlin v. State,
 
 533 So.2d 403, 408 (Miss.1988): “(1) identify the consequential fact to which the proffered evidence of other crimes, wrongs or acts is directed, (2) prove the other crimes, wrongs, or acts, and (3) articulate precisely the evidential hypothesis by which the consequential fact may be inferred from the proffered evidence.”
 
 Id.
 
 (quoting 2 Weinstein’s
 
 Evidence,
 
 404-58 (1986)). We disagree.
 

 ¶ 18. In reviewing the transcript, it is clear that the prosecutor stated that she was using the evidence to prove that Lid-dell had a particular way of selling narcotics and, thus, establish Liddell’s identity in the instant case. The prosecutor explained to the trial judge: “Because we believe that the way that Ms. Liddell conducted her business in the trailer is that she would normally have someone else, she wouldn’t talk with the customer ... about the ... transaction, take the money and then have someone else hand it to the person buying.” Whether this is termed a “common plan” or proof of identity is irrelevant. The prosecutor described in detail her “evidential hypothesis” of what she planned to prove. The C.I. later testified how Liddell usually conducted her drug business on the numerous other times he had purchased drugs from her. Furthermore, the evidence was necessary to further link Liddell to the instant crime, not just to prove she had bad character.
 

 ¶ 19. Additionally, we note that Lid-dell’s trial counsel actually first introduced the subject of the C.I.’s prior drug buys during the defense’s cross-examination of the State’s witness, Agent Hawkins. The defense asked Agent Hawkins if the C.I. had told him he could make arrangements to buy drugs from a specific person or just from that area. Agent Hawkins responded that the C.I. stated he could buy drugs from several violators in the area, and he specifically named Liddell. We also note that some of the C.I.’s testimony about other drug purchases from Liddell came out on cross-examination.
 

 ¶ 20. Liddell also takes issue with the “recency” of the C.I.’s prior drug buys. At trial, defense counsel did argue that the prior transactions were “too remote,” because it was not the same incident as the instant drug buy. However, we note that the prosecutor responded that the other drug transactions, which led to separate charges and a subsequent conviction, actually occurred
 
 after
 
 the incident in question here, and that the C.I. had bought drugs from Liddell “on several occasions.” Furthermore, as the State notes, the trial court cause numbers are consecutive in both cases (2007-0145 for the case at bar and 2007-0144 for the prior conviction), indicating the two charged transactions were close in time. We fail to see how these transactions could be considered too remote.
 

 ¶ 21. We find Liddell’s arguments regarding Rule 404(b) are without merit.
 

 B. Rule 103
 

 ¶ 22. Additionally, Liddell contends the trial judge failed to perform an on-the-record Rule 403 balancing test of the probative value versus prejudicial effect of the testimony, and this was error.
 

 ¶ 23. The supreme court offers guidance on the Rule 403 balancing test requirement in
 
 Jones v. State,
 
 920 So.2d 465, 475-76 (¶¶ 31-34) (Miss.2006), where the defendant claimed his due process rights were violated when the trial judge failed to make an on-the-record Rule 403 balancing test. The
 
 Jones
 
 court explained: “the
 
 *532
 
 weighing and balancing task required by Rule 403 is not one susceptible of mechanical performance as it asks only that a judge rely on his/her own sound judgment.”
 
 Id.
 
 at 476 (¶ 33) (citing
 
 Jenkins v. State,
 
 507 So.2d 89, 93 (Miss.1987)). The supreme court held:
 

 [Wjhile we clearly interpret the rules of evidence as requiring that all otherwise admissible evidence be “filtered” through the balancing test set forth in Rule 403, we do not interpret this requirement to be a regimented procedure that must be explicitly performed on pain of reversal. Though this Court certainly expects trial judges to have considered Rule 403 in making their evi-dentiary rulings, we certainly do not predicate the soundness of these determinations on the express use of magic words.... It follows that our review depends on the evidence and not the judge, and while a judge’s on-the-record analysis is recommended as it serves to fortify the judge’s position for purposes of review, the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial.
 

 Id.
 
 at (¶ 34).
 

 ¶ 24. Here, alter the trial judge found the evidence proper under Rule 404(b), he specifically stated: “I am required to engage in the balancing test in an effort to determine whether the probative value outweighs the prejudicial effect.” After counsel for both parties thoroughly addressed the issue, the judge made his ruling. While he did not make a lengthy analysis of the arguments presented, he ruled the probative value outweighed the prejudicial effect. Any error by the trial judge in not making a more detailed record of his analysis of the Rule 403 balancing test is harmless.
 

 C. The Limiting Instruction
 

 ¶ 25. Liddell’s final argument on this evidentiary issue is that the limiting instruction was a “legal fiction,” and the jury could not ignore the highly prejudicial statements made by the C.I. Liddell also argues the limiting instruction allowed the jury to consider evidence for an improper purpose. Furthermore, Liddell objects to the fact the instruction contains Rule 404(b) exceptions not alleged by the prosecution in their argument for the testimony’s admission.
 

 ¶ 26. We note defense counsel made a continuing objection to the limiting instruction; however, it was on the same ground as the admission of the testimony — -that it was “unduly prejudicial.” Lid-dell did not make the specific argument he now does; accordingly, it is waived.
 
 See Walker,
 
 671 So.2d at 587. Nonetheless, the issue is without merit.
 

 ¶ 27. The limiting instruction, read to the jury after the C.I.’s examination, stated: “The witness ... has testified concerning prior drug transactions with the defendant. His testimony is not to be considered by you as proof of guilt. Rather, his testimony should be only considered by you as proof of the defendant’s intent, plan and/or identity of the defendant.” The trial court has the discretion to determine if the Rule 404(b) limiting instruction is appropriate given the totality of the circumstances.
 
 Brown,
 
 890 So.2d at 913 (¶ 37). We note that the trial judge sua sponte requested both counsel draft the limiting instruction, even though the supreme court has held that the burden is upon trial counsel to request an instruction.
 
 See id.
 
 at (¶ 36).
 

 ¶ 28. In the instant case, we find no error with the grant of the limiting instruction or its content. As discussed earlier, the evidence was not improperly admitted; thus, the limiting instruction could
 
 *533
 
 not have had an improper purpose. Also, just because the instruction contained three possible exceptions for admitting the evidence — plan, intent, and/or identity— does not mean that the instruction suggests the jury should consider the evidence for improper purposes. Specifically, Lid-dell argues that her prior bad acts were used to prove “intent to distribute” because the term “intent” is included in the jury’s limiting instruction, and this topic is irrelevant to the instant charge. However, in reviewing the record we do not find that the evidence was offered for this purpose. Furthermore, in
 
 Scruggs v. State,
 
 756 So.2d 817, 821 (¶ 14) (Miss.Ct.App.2000), this Court found no error when a limiting instruction included all of the purposes found in Rule 404(b), and counsel did not specifically object to the breadth of the instruction. Thus, we find no merit to this argument.
 

 ¶ 29. Liddell makes a corollary argument that even if the limiting instruction were proper, the jury improperly used the testimony as proof of guilt because they only took approximately four minutes to arrive at a verdict. As Liddell acknowledges, a jury is presumed to follow the instructions of the trial court.
 
 Johnson v. State,
 
 475 So.2d 1136, 1142 (Miss.1985) (citing
 
 Payne v. State,
 
 462 So.2d 902, 904 (Miss.1984)). Further, the Mississippi Supreme Court has held that there is no formula to determine how long a jury must deliberate.
 
 Smith v. State,
 
 569 So.2d 1203, 1205 (Miss.1990) (citing
 
 Johnson v. State,
 
 252 So.2d 221, 224 (Miss.1971)). In
 
 Smith,
 
 the jury deliberated for three minutes on a charge of sexual battery.
 
 Smith,
 
 569 So.2d at 1204-05. In
 
 Johnson,
 
 the jury’s deliberations did not exceed seven minutes.
 
 Johnson,
 
 252 So.2d at 224. No error was found in either of these cases.
 
 Smith,
 
 569 So.2d at 1206;
 
 Johnson,
 
 252 So.2d at 224. Here, we cannot say that the length of time the jury deliberated indicates a bias against Liddell.
 

 ¶ 30. We find this issue is without merit.
 

 II. Ineffective Assistance of Counsel
 

 ¶ 31. Liddell contends she received ineffective assistance of counsel. When a party raises an ineffective assistance of counsel claim on direct appeal, “the proper resolution is to deny relief without prejudice to the defendant’s right to assert the same claim in a post-conviction relief proceeding.”
 
 Willis v. State,
 
 811 So.2d 450, 454 (¶ 8) (Miss.Ct.App.2001) (citing
 
 Read v. State,
 
 430 So.2d 832, 837 (Miss.1983)). We may determine the merits of the claim on direct appeal only if “the record affirmatively shows ineffectiveness of constitutional dimensions, or ... the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed.”
 
 Ramsey v. State,
 
 959 So.2d 15, 25 (¶ 30) (Miss.Ct.App.2006) (citing
 
 Read,
 
 430 So.2d at 841). We find neither factor was met in the instant case. Therefore, we decline to address the issue and dismiss it without prejudice.
 

 III. Sufficiency and Weight of Evidence
 

 ¶ 32. Liddell challenges the sufficiency and weight of the evidence. She claims the State did not provide credible evidence to prove she sold cocaine. Lid-dell complains that she was unjustly convicted based solely on the contradictory and improper testimony of the C.I. She goes on to argue that it is questionable who actually sold the cocaine to the C.I.
 

 ¶ 33. A motion for a directed verdict and a JNOY challenge the sufficiency of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005). “[T]he rele
 
 *534
 
 vant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Id.
 
 (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). “The evidence must show ‘beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ”
 
 Brown v. State,
 
 970 So.2d 710, 713 (¶ 7) (Miss.2007) (quoting
 
 Bush,
 
 895 So.2d at 843 (¶ 16)). However, mindful of the reasonable doubt standard, if “ ‘reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.”
 
 Bush,
 
 895 So.2d at 843 (¶ 16) (quoting
 
 Edwards v. State,
 
 469 So.2d 68, 70 (Miss.1985)).
 

 ¶ 34. Alternatively, a motion for a new trial challenges the weight of the evidence.
 
 Id.
 
 at 844 (¶ 18). The standard of review for the trial court’s denial of a motion for a new trial is an abuse of discretion. This Court will disturb a verdict only “when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 
 The reviewing court acts as a “thirteenth juror” and views the evidence in the light most favorable to the verdict.
 
 Id.
 
 All “evidence consistent with the defendant’s guilt is accepted as true together with any reasonable inferences that may be drawn from that evidence.”
 
 Young v. State,
 
 891 So.2d 813, 821 (¶ 21) (Miss.2005) (citing
 
 Heidel v. State,
 
 587 So.2d 835, 838 (Miss.1991)).
 

 ¶ 35. Viewing the evidence in the light most favorable to the prosecution, we find sufficient evidence to convict Liddell of selling cocaine. Liddell was indicted under section 41-29-139(a)(l), which requires the State to prove that Liddell knowingly or intentionally sold a controlled substance. The State proved that the C.I. drove to Liddell’s trailer, greeted her, asked to see the cocaine he had arranged to purchase, entered the trailer, counted out $150, placed the money on the kitchen counter, and exited the trailer. The C.I. waited in his vehicle until a plastic container was thrown out of the trailer onto the yard. The C.I. retrieved it, spoke to Lid-dell and Bogan, who were at the trailer door, about other possible drug purchases, and then left. The container contained 1.8 grams of “base” or crack cocaine.
 

 ¶ 36. We do not find Liddell was convicted “solely” on the testimony of the C.I., as Liddell claims; and the testimony is neither contradictory nor improper. The C.I.’s testimony was corroborated by the video and audio tapes, which were entered into evidence and played for the jury. Additionally, Agent Hawkins’s testimony that he heard, over the remote audio device, the C.I. greet Liddell and ask to look at the drugs before he bought them, was corroborated by the C.I. Further, as the State points out, whether Bogan or Liddell tossed the drug container into the yard is irrelevant; there is still sufficient evidence to show, even though Bogan was a runner, Liddell sold the drugs to the C.I.
 

 ¶ 37. Moreover, we do not find the trial court abused its discretion in denying Lid-dell’s motion for a new trial. “Any factual disputes are properly resolved by the jury and do not mandate a new trial.”
 
 Moore v. State,
 
 859 So.2d 379, 385 (¶ 26) (Miss.2003) (quoting
 
 McNeal v. State,
 
 617 So.2d 999, 1009 (Miss.1993)). The jury chose not to believe Bogan’s contradictory testimony denying any wrongdoing by her or Liddell. We cannot say, viewing the evidence in the light most favorable to the verdict, that to
 
 *535
 
 allow this judgment to stand would sanction an unconscionable injustice. Therefore, the trial court did not err in denying Liddell’s motion for a JNOV or, alternatively, a new trial. Liddell’s arguments regarding the sufficiency and weight of the evidence are without merit.
 

 CONCLUSION
 

 ¶ 38. We find no reversible error committed by the trial court. Liddell’s ineffective assistance of counsel claim is dismissed without prejudice to be raised in post-conviction relief proceedings, should she choose to do so. Thus, we affirm Liddell’s conviction and sentence.
 

 ¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCE TO RUN CONSECUTIVELY TO A PREVIOUSLY IMPOSED SENTENCE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TUNICA COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Liddell was convicted of selling cocaine in a subsequent covert drug buy and was sentenced to ten years with five years suspended. The Mississippi Supreme Court affirmed that conviction in March 2009.
 
 See Liddell v. State,
 
 7 So.3d 217 (Miss.2009).
 

 [2]
 

 . After the appeal was perfected, this Court granted defense counsel's motion to withdraw and substituted Leslie S. Lee of the Office of Indigent Appeals as lead counsel for Liddell’s appeal. Liddell, in turn, moved to have law students at the University of Mississippi School of Law Criminal Appeals Clinic work on her appeal under the direction of the supervising professor/attorney Phillip Broad-head, as attorney of record. This Court granted the motion, and Laurel Blue and E. Daniel Martin, law students participating in the Clinic, and who had been previously admitted to limited practice under Mississippi Code Annotated section 73-3-207 (Rev.2008), were appointed as special counsel.