# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01495-COA

NITIN MALIK A/K/A NATIN MALIK A/K/A MATIN MALIK

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/11/2015 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | RICHARD ANTHONY FILCE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA MCCLINTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 12/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1. Nitin Malik was convicted of two counts of the sale of hydrocodone with acetaminophen, a schedule III controlled substance, in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2013). He was sentenced to two consecutive eight-year terms. The Rankin County Circuit Court denied Malik's posttrial motion. Malik now appeals. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On May 3, 2013, the Mississippi Bureau of Narcotics (MBN) sent a confidential informant (CI) into Hometown Quickie, a convenience store located in Richland. The CI

went there to purchase hydrocodone with acetaminophen pills, more commonly known as Lorcet 10 pills. The MBN agents equipped the CI with an audio-and-video recording device, fifty dollars, and a vehicle. When the CI entered the store, she encountered Malik and after several minutes of random conversation, requested "eight for forty." This transaction was captured on the audio recording but not on video.

¶3. Immediately after the purchase, the CI met with an MBN agent and turned over eight pills and ten dollars change. The pills were sent off to a crime lab and tested positive for hydrocodone with acetaminophen, or Lorcet 10 pills. The pills were later used as evidence against Malik. MBN did not immediately arrest Malik; instead the agency continued building a case against him.

¶4. On June 3, 2013, an MBN agent and the CI worked together to make another purchase from Malik. The CI allegedly prearranged a meeting with Malik. The CI again drove to the convenience store and purchased pills from Malik. The CI purchased ten pills for fifty dollars. This subsequent transaction was not captured on audio or video recording because the device's battery died shortly before the transaction began.

¶5. On this occasion, the MBN agent followed the CI to the store and watched her go inside. The agent waited outside and listened to the transaction through his equipment, which worked with the CI's device. Once the task was complete, the MBN agent met with the CI and collected the bag of pills. The crime lab confirmed that the ten pills contained hydrocodone with acetaminophen.

¶6. On September 3, 2014, a grand jury returned a four-count indictment on Malik. Malik

was charged with two counts of the sale of a controlled substance (Counts I and III) and two counts of conspiracy to sell a controlled substance (Count II and IV). On May 4, 2015, the case proceeded to trial on Counts I and III only. Counts II and IV were ordered nolle prosequi[1] pursuant to the State's motion that in exchange for Malik's guilty plea on Counts I and III, the conspiracy charges would be abandoned. Notably, the State did not pursue the conspiracy charges after Malik elected to proceed with a trial.

¶7. Following a two-day jury trial, Malik was found guilty on both counts. On May 11, 2015, he was sentenced to eight years on Count I, for the sale of less than ten dosage units, and he received an eight-year sentence on Count III, for the sale of ten dosage units but less than twenty dosage units. The sentences were order to run consecutively, with all time to be served in the custody of the Mississippi Department of Corrections.

¶8. Malik timely filed posttrial motions for a new trial and an amended motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Within his motion he also requested a hearing to allow testimony of witnesses for completion of the record. Malik asserted that (1) the State failed to provide the defense with exculpatory evidence during discovery, (2) the State made improper closing arguments, (3) the trial court erred in allowing evidence of prior bad acts, and (4) his counsel was ineffective. Following a hearing on August 29, 2016, the circuit judge found that the motions were not supported by the evidence in the case. The motions were denied. Aggrieved, Malik appeals and asserts the same. We find no error and affirm.

---

[1] Nolle prosequi is a Latin term that serves as "a legal notice that a lawsuit or prosecution has been abandoned." Black's Law Dictionary (10th ed. 2014).

ANALYSIS

¶9.     On appeal, Malik raises each issue asserted below.  He asserts that each issue is inextricably intertwined and resulted in prejudice to him during the trial.  We address each separately.

        *I.*      Brady *Violation*

¶10.    Malik first argues that the State failed to disclose exculpatory evidence that was favorable to him, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  He argues that the State had a duty to reveal that the same CI that testified against him had unsuccessfully sought to purchase pills from him on an occasion prior to May 3 and June 3, 2013.  Malik asserts that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.  He argues that the State never disclosed the failed purchase attempt, and, in fact, it argued otherwise to the jury.  He contends that a reasonable probability exists that the outcome of the trial would have been different if this evidence had been disclosed.

¶11.    The Mississippi Supreme Court has held that "[t]he standard of review for a trial court's ruling on a discovery violation is abuse of discretion." *Curry v. State*, 939 So. 2d 785, 787 (¶8) (Miss. 2006).  Further, the supreme court "has stated not all failures to disclose exculpatory evidence constitute reversible error." *Id.*  "The question to be asked regarding a discovery violation is whether there is a reasonable probability that the verdict would have been different but for the governmental evidentiary suppression, which undermines

4

confidence in the outcome of the trial." *Id.*

¶12.    Following his conviction, Malik obtained new counsel and filed an "Amended Motion for Judgment Notwithstanding the Verdict or in the Alternative a New Trial and Specific Request for a Hearing to Allow Testimony of Witnesses for Purposes of Completion of Record." The circuit judge granted the request for a hearing. On August 29, 2016, both parties argued their positions with regard to the alleged exculpatory evidence. Malik asserted that the video and/or audio recording, made by law enforcement, of the unsuccessful purchase attempt constituted exculpatory evidence. He argued that the evidence could have been used at trial to substantially discredit the CI's testimony. The State contended that the failed purchase attempt was not exculpatory evidence because it turned out that Malik had no pills to sell – not that he refused to sell the CI the pills. The circuit judge agreed with the State and declined to find that the failed purchase should be considered exculpatory evidence.

¶13.    The issue is now before us. When dealing with alleged *Brady* violations, the supreme court has held:

> To establish a *Brady* violation, a defendant must prove the following: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Fortenberry v. State*, 191 So. 3d 1245, 1255 (¶32) (Miss. Ct. App. 2015) (quoting *King v. State*, 656 So. 2d 1168, 1174 (Miss. 1995)).

¶14.    As to the first prong, the record clearly provides that the State did not possess a

5

recording, or any physical evidence, of the prior failed purchase attempt. During the hearing on the motion, the State informed the court that Agent Richard Wright with MBN was present and prepared to testify to the events surrounding the failed purchase attempt. The State confirmed that MBN did in fact send the CI into Malik's store to purchase pills; however, Malik had no pills to sell and directed the CI to a relative's home. The CI was unable to purchase from Malik's relative because the relative also had no pills to sell. As a result, MBN made no record of the attempt, and, in fact, the recording had been taped over since no case was being made from the attempt. Because the alleged encounter was not recorded, and also because the MBN agent's testimony would likely show that the only reason the CI was unsuccessful was because Malik had no pills to sell at the time, we do not find the alleged exculpatory evidence favorable to Malik. This prong is not satisfied.

¶15. We also do not find that the second prong of *Brady* is satisfied. It is evident that Malik does not possess physical evidence of the purchase attempt, as the record confirms that no audio or video recording exists. The audio and video recording was never downloaded, no report of the attempt was made, the recording was eventually taped over, and no criminal case exists regarding the attempt. With regard to whether Malik could have obtained the recording, we find no evidence in the record that Malik's trial counsel either corresponded with or attempted to meet with the MBN agents to obtain information pertaining to any previous purchase attempts. There is also no claim that Malik had no access to the agents. Thus, we find that with reasonable diligence, Malik's trial counsel could have obtained this information.

6

¶16. As to the third prong, we do not find that the State suppressed evidence that was favorable to Malik. First, we cannot say that the evidence was actually favorable to him. Furthermore, we find no evidence in the record that suggests that the State suppressed the evidence. This prong is not satisfied.

¶17. Likewise, we find that the fourth prong is not satisfied. Based on the foregoing analysis, we do not conclude that a reasonable probability exists that the outcome would have been different if the purchase attempt had been disclosed to the defense.

¶18. We do not find that Malik's theories or speculation of how the jury may have perceived the information overcomes the four-pronged test in *Brady*. Therefore, we find no error in the circuit judge's holding that the failed purchase attempt did not constitute exculpatory evidence. This issue is without merit.

## II. Improper Closing Argument

¶19. Malik next argues that the State improperly stated in its closing argument that the CI had bought drugs from him on prior occasions. He further argues that the State made the statements in an attempt to bolster the CI's credibility, which he asserts was lawyer misconduct that created prejudice and also violated the Mississippi Rules of Evidence.

¶20. "The standard of review that this Court must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused[,] so as to result in a decision influenced by the prejudice so created." *Wilson v. State*, 194 So. 3d 855, 864 (¶30) (Miss. 2016) (citation and internal quotation marks omitted). "The purpose of a closing

7

argument is to fairly sum up the evidence." *Id.* (citation omitted). "Prosecutors are not allowed to employ tactics [that] are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Id.* (citation and internal quotation marks omitted). "The prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts." *Id.* (citation omitted). "Counsel cannot, however, state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence." *Id.*

¶21. During closing argument, the State discussed the CI's inclination to cooperate with law enforcement. The State noted that the CI was a former nurse who had been caught forging prescriptions in order to obtain pills illegally. The CI had lost her nursing license, was facing criminal charges in both Rankin and Simpson Counties, and, if convicted, she could lose custody of her children. The State acknowledged that the CI's credibility was an issue.

¶22. The State noted that the CI had been addicted to pain medication and that she was willing to buy drugs to cooperate with law enforcement. The State then made the following statement to the jury:

> Where does somebody addicted to pain medicine go to get their drugs? To somebody they know . . . will sell them drugs. . . . Who did she make arrangements to buy Lorcet or Hydrocodone-Acetaminophen from? This defendant, two separate times, May the 3rd, June the 3rd, that's who she went and bought drugs from, not some stranger, not some random person at a convenien[ce] store that she had never met or didn't know.

At that point, defense counsel objected that the statements were going beyond the record. The circuit judge overruled the objection, stating that "the jury's recollection of the evidence

8

will control. This is argument." The State continued its argument, asserting that the CI "went to Nitin Malik, who she knew she could buy drugs from."

¶23. Malik contends that the State's reference implied that the CI had purchased drugs from him on prior occasions. He asserts the statements served to introduce facts that were not in evidence – which prejudiced him before the jury. He argues the statements were also used to bolster the CI's credibility.

¶24. This Court has previously held that "arguing statements of fact that are not in evidence or necessarily inferable from it and that are prejudicial to the defendant is error." *Mitchell v. State*, 720 So. 2d 492, 495-96 (Miss. Ct. App. 1998). However, this Court has also held that counsel "may draw whatever deductions and inferences that seem proper to him from the facts." *Giles v. State*, 187 So. 3d 116, 124 (¶28) (Miss. 1998). While the State's comments suggest that the CI previously purchased pills from Malik, the statements were not improper. The CI and two MBN agents testified that Malik became known to them through their investigation into the CI's alleged relationship with him. Therefore, the State's comments were appropriately based upon facts established through witness testimony.

¶25. The inference that the CI had previously purchased pills could have been reasonably drawn from the testimony. The State did not make reference to the previous attempt or provide any new facts pertaining to prior purchases. Furthermore, we note that the jury was instructed to regard the arguments, statements, and remarks made by counsel during closing arguments as a means to help with understanding the evidence and application of the law, but not as evidence. Therefore, we do not find that the closing argument created unjust prejudice

9

against Malik or influenced the jury's decision.

¶26.   This Court has previously held that "[t]he standard of review for the admission or exclusion of evidence is . . . abuse of discretion." *Liddell v. State*, 33 So. 3d 524, 529 (¶12) (Miss. Ct. App. 2010) (citation omitted). "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence." *Id.* "Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse th[e] ruling." *Id* at 529-30 (¶12) (quoting *Williams v. State*, 991 So. 2d 593, 597 (¶8) (Miss. 2008)). This issue is without merit.

### III.   Prior-Bad-Acts Evidence

¶27.   As to the alleged violation of Mississippi Rule of Evidence 404(b), we do not find that the statements made by the State during closing argument sought to introduce evidence of other crimes, wrongs, or bad acts of the defendant. Malik contends that the State's references were used to show that he had committed other similar offenses, and, therefore, he must have committed the offenses for which he was being tried. We do not find that the State suggested that the CI had purchased pills from Malik on a prior occasion. Rather, we interpret the statements to mean that the CI *knew* that she could buy drugs from him. Such knowledge was not necessarily limited to previous personal experience.

¶28.   During the hearing on the posttrial motion, the circuit judge declined to accept Malik's reasoning that mere knowledge was proof that he had sold pills on a prior occasion. The circuit judge concluded that the statements did not equate to the State "putting on evidence of any prior bad acts." Likewise, we hold that the State did not violate Rule 404(b) in its

10

closing argument because the statements were not made to prove that Malik had sold drugs to the CI before.

¶29. We find no abuse of discretion by the circuit judge. The decision to overrule Malik's objection to the State's closing argument created no prejudice to the accused. This issue is without merit.

*IV.    Ineffective Assistance of Counsel*

¶30. In his final assignment of error, Malik asserts that he received ineffective assistance of counsel when his trial counsel failed to adequately conduct a pretrial investigation to explore an eyewitness's potential testimony for trial. He further asserts that the eyewitness's prospective testimony refuted the State's case. He contends that the eyewitness testimony would have been persuasive to the defense's theory that the CI fabricated the drug buys.

¶31. "When considering a claim of ineffective assistance of counsel, this Court must find that trial counsel's performance was deficient and that there would have been a different result in the verdict if it were not for trial counsel's deficiency." *Payton v. State*, 41 So. 3d 713, 719 (¶23) (Miss. Ct. App. 2009) (citation omitted). "There is a rebuttable presumption that counsel's representation is competent and that the acts in question fall within the 'wide range of professionally competent assistance.'" *Porter v. State*, 963 So. 2d 1225, 1229 (¶15) (Miss. Ct. App. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).

¶32. Additionally,

[this] Court rarely determines issues of ineffective assistance of counsel on direct appeal unless: "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration

11

of the findings of fact of the trial court."

*Payton*, 41 So. 3d at 719 (¶23) (quoting *Graves v. State*, 914 So. 2d 788, 798 (¶35) (Miss. Ct. App. 2005)).

¶33. Malik maintains that his attorney rendered ineffective assistance when he failed to adequately explore the cashier's eyewitness testimony. He argues that the cashier should have been called to testify on his behalf about the CI's alleged fabricated drug purchase. In support of this claim, he cites to the supreme court's holding in *Johns v. State*, 926 So. 2d 188 (Miss. 2006), where the court reversed on the basis that the defendant's counsel had rendered ineffective assistance. The defendant's trial counsel had failed to interview an alibi witness.

¶34. The State disputes Malik's contention that this case is analogous to *Johns*. The State asserts that, "at a minimum, counsel has a duty to interview potential witnesses and to make independent investigation of the facts and circumstances of the case." (Quoting *Payton v. State*, 708 So. 2d 559, 561 (¶8) (Miss. 1998)). The State asserts that unlike the factual scenario in *Johns*, Malik's eyewitness was in fact interviewed before the trial, albeit just three days prior to the trial. We agree that this case is distinguishable from *Johns*.

¶35. Moreover, we find that trial counsel did not render ineffective assistance solely because he elected not to call the cashier as an eyewitness for Malik. This Court has previously held that "[c]ounsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall[s] within the ambit of trial strategy and will not stand as support for an ineffective[-]assistance[-]of[-]counsel claim."

12

*Jackson v. State*, 73 So. 3d 1176, 1181-82 (¶22) (Miss. Ct. App. 2011) (citations and internal quotation marks omitted).

¶36. Further, "[t]his Court will only under exceptional circumstances[] second guess counsel on matters of trial strategy." *Hill v. State*, 850 So. 2d 223, 226 (¶14) (Miss. Ct. App. 2003) (citing *Marshall v. State*, 759 So. 2d 511, 513 (¶11) (Miss. Ct. App. 2000)). We do not find that the alleged errors by Malik's trial counsel "were so egregious as to constitute a deficiency in performance or prejudicial to [Malik]'s defense as to affect the outcome of trial." *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995).

¶37. Additionally, we find no indication of ineffective assistance of counsel in the record. "The Mississippi Supreme Court has stated that, where the record cannot support an ineffective[-]assistance[-]of[-]counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief." *Wilcher v. State*, 863 So. 2d 719, 761 (¶162) (Miss. 2003) (quoting *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002)). "We may determine the merits of the claim [of ineffective assistance of counsel] on direct appeal only if the record affirmatively shows ineffectiveness of constitutional dimensions, or the parties stipulate that the record is adequate . . . . " *Liddell*, 33 So. 3d at 533 (¶31) (citation and internal quotation marks omitted). The record does not affirmatively show ineffectiveness of constitutional dimensions. And the parties did not stipulate to the adequacy of the record for this Court to find ineffective assistance. Therefore, we decline to find ineffective assistance of counsel at this juncture, but we preserve this issue for post-conviction relief.

¶38. We conclude that Malik's arguments are without merit, and we affirm the circuit court's judgment.

¶39. **AFFIRMED.**

**LEE, C.J., CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., NOT PARTICIPATING.**