# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00738-COA

**MARCUS TAYLOR** APPELLANT

**v.**

**STATE OF MISSISSIPPI** APPELLEE

DATE OF JUDGMENT: 06/01/2023
TRIAL JUDGE: HON. JOSEPH H. LOPER JR.
COURT FROM WHICH APPEALED: CHOCTAW COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: DAMON RAMON STEVENSON
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
 BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE: CIVIL - POST-CONVICTION RELIEF
DISPOSITION: AFFIRMED - 05/06/2025
MOTION FOR REHEARING FILED:

  **EN BANC.**

  **WILSON, P.J., FOR THE COURT:**

¶1. In 2015, Marcus Taylor pled guilty to conspiracy to sell a schedule III controlled substance and was sentenced as a nonviolent habitual offender to serve a term of fifteen years in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole. In 2023, Taylor filed a motion for post-conviction relief (PCR) challenging his sentence and seeking parole eligibility. The circuit court denied Taylor's motion, finding that it was barred by the three-year statute of limitations of the Uniform Post-Conviction Collateral Relief Act (UPCCRA), Miss. Code Ann. § 99-39-5(2) (Rev. 2020), and without merit. Taylor appealed.

¶2. Although Taylor did not raise the issue, this Court noted that his sentence exceeds the

five-year maximum sentence authorized for his offense. We ordered the parties to file supplemental briefs addressing (1) whether Taylor's sentence is illegal, and (2) whether his PCR motion is nonetheless barred by the UPCCRA's statute of limitations under *Howell v. State*, 358 So. 3d 613 (Miss. 2023). We conclude that although Taylor's sentence exceeds the maximum sentence authorized for his offense, his PCR motion is barred by the statute of limitations. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. In 2014, a Choctaw County grand jury indicted Taylor for conspiracy to sell "Hydrocodone Acetaminophen, a schedule III controlled substance" (Count I); conspiracy to sell "Promethazine with Codeine, a schedule V controlled substance" (Count II); and business burglary for breaking and entering a drugstore to steal drugs (Count III). All offenses were alleged to have been committed on or about December 7, 2013. Taylor was indicted as a nonviolent habitual offender. The case was prosecuted by the Attorney General rather than the district attorney.

¶4. In February 2015, Taylor, represented by attorney Damon Stevenson, accepted a plea bargain pursuant to which he would plead guilty to Count I as a habitual offender, the State would recommend a sentence of fifteen years in MDOC custody, Counts II and III would be dismissed, and "any other pending charges in other counties related to burglary of a pharmacy [would] be dismissed." Taylor's plea petition acknowledged—erroneously, it turns out—that the maximum sentence for Count I was twenty years.

¶5. At his plea hearing, Taylor pled guilty to Count I, conspiracy to sell "a schedule III

2

controlled substance." At least six times during the hearing, the court or the prosecutor specifically stated that Count I involved "a schedule III controlled substance." The court advised Taylor—erroneously—that the maximum sentence for Count I was twenty years. As the factual basis for the charge, the prosecutor stated that if the case went to trial, the State would prove that Taylor and three accomplices broke into Ackerman Discount Drugs and stole "Hydrocodone Acetaminophen," "which is a schedule III controlled substance," and conspired to sell the drugs. Taylor agreed that he was guilty of Count I as described. The prosecutor stated that the State had agreed to dismiss Counts II and III of the indictment and "to not pursue or dismiss any other charges or indictments related to drugstore burglaries [in other] counties," including but not limited to "Carroll, Lincoln, Pike, Yalobusha, and Warren Counties." Taylor agreed to give truthful testimony against any of his co-defendants in any of those counties. The court accepted Taylor's guilty plea and sentenced him to serve fifteen years in MDOC custody as a nonviolent habitual offender.

¶6. The judgment, which the judge signed the same day, did not accurately record Taylor's plea. Although the judgment correctly stated that Taylor pled guilty to Count I of the indictment and that Counts II and III were dismissed, the judgment erroneously stated that Taylor had been indicted for three counts of business burglary. The judgment did not mention the actual charge to which Taylor pled guilty: conspiracy to sell a schedule III controlled substance. Consistent with the court's pronouncement, the judgment sentenced Taylor to serve fifteen years in MDOC custody as a nonviolent habitual offender.

¶7. One year later, Taylor, represented by a new attorney, filed a "motion to reconsider

3

sentencing" in which he claimed that "[d]ue to some confusion and miscommunication, [Taylor] believe[d] that he pleaded guilty to Business Burglary which carries a maximum sentence of seven years." *See* Miss. Code Ann. § 97-17-33(1) (Rev. 2006). Taylor asked the court to resentence him consistent with the maximum sentence for business burglary.

¶8. In response, the State filed a motion to amend the judgment to show that Taylor pled guilty to conspiracy to sell "a schedule III controlled substance." The State characterized the original judgment's indication that Taylor pled guilty to burglary as a "scrivener's error."

¶9. In March 2016, the court[1] entered a corrected judgment recognizing that the original judgment should have stated that Taylor pled guilty to conspiracy to sell "a Schedule III Controlled Substance," not business burglary. The corrected judgment made no change to Taylor's sentence.

¶10. Two days later, the court denied Taylor's motion to reconsider sentencing. The court stated that it had reviewed Taylor's plea petition and the transcript of his plea hearing and found that it was "clear" that Taylor "was fully aware" he was pleading guilty to conspiracy to sell "a Schedule II controlled substance" and that the sentence imposed was consistent with Taylor's plea bargain and plea petition. The court acknowledged that the original judgment "contained a clerical error" in indicating that Taylor pled guilty to business burglary when, in fact, he pled guilty to conspiracy to distribute "a Schedule II controlled substance." This order's two references to "a Schedule II controlled substance" are the only

---

[1] Judge Clarence E. Morgan III accepted Taylor's plea, sentenced Taylor, and entered the original judgment in the case. Judge Morgan retired in December 2015, and Judge Joseph H. Loper Jr. presided over all subsequent proceedings in the case.

4

references to "a Schedule II controlled substance" in the entire record.

¶11.    Seven years passed.  In March 2023, Taylor, represented by his original attorney, Stevenson, filed a rather unusual PCR motion.  Although it was styled as a PCR motion and cited the UPCCRA, the motion did not articulate any cognizable ground for relief under the Act.  Rather, Taylor argued that he had "been rehabilitated during his term of incarceration"; that his prior criminal history was attributable to his youth, "peer pressure," and a lack of education; that two of his co-defendants had already been released from custody; and that his children and elderly parents needed his support.  For all these reasons, Taylor asked the court "to resentence him with parole eligibility" as a non-habitual offender.

¶12.    The court denied Taylor's motion.  The court recounted the case's procedural history: that in 2015, Taylor pled guilty to conspiracy to sell "a Schedule III Controlled Substance" and was sentenced to serve fifteen years in MDOC custody as a habitual offender; that the original "judgment contained a scrivener's error" in indicating that Taylor was sentenced for burglary rather than conspiracy to sell "a Schedule III Controlled Substance"; and that in 2016, the court entered a corrected judgment imposing the same sentence for the true crime of conspiracy to sell "a Schedule III Controlled Substance."  The court then held that Taylor's motion was barred by the statute of limitations, Miss. Code Ann. § 99-39-5(2), that none of the statutory exceptions to the statute of limitations applied, and that the court had no authority to modify Taylor's sentence.  Taylor filed a notice of appeal.

**ANALYSIS**

¶13.    On appeal, Taylor, still represented by Stevenson, makes a new claim.  He no longer

5

argues that he should be resentenced because he has been rehabilitated or based on other supposed mitigating factors. Rather, he argues only that when the circuit court entered the corrected judgment, the court improperly resentenced him as a habitual offender without holding a hearing. Taylor argues that this claim is not barred by the statute of limitations because he had a "fundamental constitutional right" to be present at sentencing.

¶14. This argument is without merit. As recounted above, the circuit court did not resentence Taylor or impose a new or different sentence in the corrected judgment. Rather, the court merely corrected a scrivener's error in the original judgment to show that Taylor pled guilty to conspiracy to sell a schedule III controlled substance, not burglary. The corrected judgment imposed the *same* sentence as the original judgment. During Taylor's plea hearing and sentencing, Taylor admitted that he was a habitual offender, his prior convictions were admitted into evidence, and the court found beyond a reasonable doubt that he was a habitual offender. There was no need for a new hearing prior to entry of the corrected judgment. Thus, Taylor's sole claim on appeal is without merit.

¶15. Nonetheless, while this appeal was pending, we noted an apparent problem with Taylor's sentence. The conspiracy statute generally provides that the maximum sentence for a conspiracy to commit a felony is *five years*. Miss. Code Ann. § 97-1-1(1) (Supp. 2013).[2] The statute provides that conspiracies to commit certain crimes under the Uniform Controlled Substances Law are subject to a maximum sentence of twenty years, but conspiracy to sell a schedule III controlled substance is *not* one of those offenses. Specifically, the conspiracy

___

[2] The conspiracy statute has not been amended since Taylor's offense in 2013.

6

statute provides that a conspiracy to violate "Section 41-29-139(b)(1), Section 41-29-139(c)(2)(D) or Section 41-29-313(1), being provisions of the Uniform Controlled Substances Law," is punishable by imprisonment for up to twenty years. Miss. Code Ann. § 97-1-1(3). At all relevant times, section 41-29-139(b)(1) has pertained to the sale or possession with intent to sell *schedule I or II* controlled substances. *See* Miss. Code Ann. § 41-29-139(b)(1) (Rev. 2013). Following a 2016 reorganization of section 41-29-139, subsection (c)(2)(D) no longer exists. *See* 2016 Miss. Laws ch. 482, § 1 (S.B. 2169). In prior versions of section 41-29-139, subsection (c)(2)(D) pertained to the possession of certain quantities of marijuana. *See* Miss. Code Ann. § 41-29-139(c)(2)(D) (Rev. 2013). Finally, at all relevant times, section 41-29-313(1) has pertained to the possession or transfer of specified "precursor chemicals or drugs." Miss. Code Ann. § 41-29-313(1) (Rev. 2013). Thus, none of the three provisions of the Uniform Controlled Substances Law specified in the conspiracy statute relate to the sale of *schedule III* controlled substances. Therefore, the maximum sentence for the offense that Taylor pled guilty to committing was *five years*.

¶16. We entered an order raising this issue and directing the parties to file supplemental briefs addressing (1) whether Taylor's sentence was illegal, and (2) whether our consideration of the issue was nonetheless barred by the three-year statute of limitations pursuant to the Supreme Court's decision in *Howell*, 358 So. 3d at 615-16 (¶¶7-12) (overruling prior precedent under which "errors affecting fundamental constitutional rights, such as an illegal sentence, [were] excepted from" the statute of limitations).

¶17. Citing various cases that *Howell* overruled, Taylor's supplemental brief argues that

his "illegal sentence" should be set aside despite the time-bar because he has a "fundamental right to be free from an illegal sentence."

¶18.    The State's supplemental brief first argues that Taylor's sentence is not illegal because Hydrocodone Acetaminophen is actually a *schedule II* controlled substance, not a schedule III controlled substance.   The State cites Mississippi Code Annotated section 41-29-115(b)(1)(vi), which *currently* provides that "Hydrocodone, whether alone or in combination with any material, compound, mixture or preparation," is a schedule II controlled substance. Miss. Code Ann. § 41-29-115(b)(1)(vi) (Rev. 2023).   The State then argues that the description of Hydrocodone Acetaminophen as a "schedule III controlled substance" in Taylor's indictment may be disregarded as a mere "scrivener's error."

¶19.    The problem with the State's argument is that it relies on language that was added to the statute *after* Taylor's offense.  At all relevant times, "Hydrocodone" was a schedule II controlled substance.  Miss. Code Ann. § 41-29-115(a)(1)(vi) (Rev. 2013).  However, at all relevant times, "[n]ot more than three hundred (300) milligrams of dihydrocodeinone (*also known as hydrocodone*), or any of its salts, per one hundred (100) milliliters or not more than fifteen (15) milligrams per dosage unit, *with one or more active nonnarcotic ingredients in recognized therapeutic amounts*" was designated a schedule III controlled substance.  Miss. Code Ann. § 41-29-117(A)(e)(4) (Rev. 2013) (emphasis added).[3]  It was not until *April 2016*

---

[3] *See also Moore v. State*, 203 So. 3d 775, 778 (¶16) (Miss. Ct. App. 2016) (explaining that the trial court set aside a conviction of possession of a schedule II controlled substance based on "a Mississippi Crime Laboratory report showing that [the] pills were actually a Schedule III preparation of hydrocodone and acetaminophen, not Schedule II hydrocodone"); *Malik v. State*, 249 So. 3d 416, 419 (¶1) (Miss. Ct. App. 2017) (For sales made in 2013, the defendant "was convicted of two counts of the sale of hydrocodone with

8

that the Legislature (a) added the language that the State quotes to schedule II and (b) deleted the language in schedule III covering Hydrocodone combination products, such as Hydrocodone Acetaminophen. *See* 2016 Miss. Laws ch. 392, §§ 2-3 (H.B. 1369) ("AN ACT . . . TO AMEND SECTION 41-29-115 . . . TO PROVIDE THAT HYDROCODONE IS A SCHEDULE II SUBSTANCE EVEN WHEN IN COMBINATION WITH OTHER MATERIALS . . . .").[4] Thus, "Hydrocodone Acetaminophen" was a *schedule III* controlled substance at the time of Taylor's offense—as was clearly stated in Taylor's indictment and throughout his plea hearing. Therefore, the State's argument that Taylor actually pled guilty to conspiracy to sell a schedule II substance is clearly wrong.

¶20. The State's supplemental brief also relies on the circuit court's March 2016 order denying Taylor's motion to reconsider his sentence. As noted above, this order stated that after reviewing Taylor's plea petition and plea hearing transcript, the court found it was "clear" that Taylor "was fully aware of the fact that he was pleading guilty to the crime of Conspiracy to Sell or Transfer a *Schedule II* Controlled Substance." (Emphasis added).

---

acetaminophen, a schedule III controlled substance."); *Sutton v. State*, 238 So. 3d 1150, 1153 n.2 (Miss. 2018) ("[A] forensic scientist with the Mississippi Forensics Laboratory[] gave expert testimony that the sixty pills [the defendant was charged with possessing in 2014] were a Schedule III controlled substance, containing hydrocodone and acetaminophen.").

[4] The federal Drug Enforcement Administration rescheduled "Hydrocodone combination products," including Hydrocodone Acetaminophen, from schedule III to schedule II, effective October 6, 2014. *Schedules of Controlled Substances: Rescheduling of Hydrocodone Combination Products From Schedule III to Schedule II*, 79 FR 49,661 (Aug. 22, 2014); *see id.* at 49,665 (noting that Hydrocodone Acetaminophen was "the most frequently prescribed combination" affected by the rescheduling). The Mississippi Legislature followed suit in 2016.

Citing this statement, the State argues that "[t]he circuit court correctly found that Taylor knowingly, intelligently, and voluntarily pleaded guilty to" conspiring to sell "a Schedule II Controlled Substance."

¶21. This argument is also untenable. The circuit court's March 2016 order is the only place in the record that the Hydrocodone Acetaminophen in Count I of Taylor's indictment is referred to as a "Schedule II controlled substance." Taylor's indictment and the corrected judgment both correctly describe the drug as a "schedule III controlled substance," and the court and the prosecutor repeatedly described it as a "schedule III controlled substance" throughout Taylor's plea hearing. Whether the drug was a schedule III controlled substance was not in dispute in 2016. In context, it is apparent that the circuit court's March 2016 order reflects a simple mistake about a then-uncontested and seemingly unimportant point—not a considered finding that Taylor knowingly pled guilty to conspiracy to sell a schedule II controlled substance.[5]

¶22. Thus, it is apparent that Taylor's fifteen-year sentence exceeds the five-year maximum sentence for the crime to which he pled guilty. However, the UPCCRA provides that a PCR motion must be filed within three years after the entry of a judgment of conviction based on a guilty plea. Miss. Code Ann. § 99-39-5(2).[6] Taylor filed his PCR motion *eight years* after

_____

[5] Indeed, such a finding would have been illogical based on the clear language of the indictment and the transcript of Taylor's plea hearing.

[6] Taylor's claim is clearly subject to the UPCCRA and its limitations. Under the UPCCRA, "[a]ny person sentenced by a court of record . . . may file a motion to vacate, set aside or correct the judgment or sentence . . . if the person claims . . . [t]hat the sentence exceeds the maximum authorized by law." Miss. Code Ann. § 99-39-5(1)(d). The UPCCRA is the "exclusive and uniform procedure for the collateral review of convictions

10

his judgment was entered. The UPCCRA's statute of limitations includes certain statutory exceptions, but none apply here. The dissent relies on the exception for "cases in which the petitioner claims that his sentence *has expired*." Miss. Code Ann. § 99-39-5(2)(b) (emphasis added). However, the Mississippi Supreme Court has rejected this argument. In *Sneed v. State*, 722 So. 2d 1255, 1257 (¶10) (Miss. 1998), *overruled on other grounds by Howell*, 358 So. 3d at 615 (¶8), the petitioner similarly argued that the statutory exception applied because his "sentence was illegal," and the legal sentence he should have received "would have expired." The Supreme Court rejected this argument, holding: "This is *obviously* not a claim that the sentence has expired. It is a claim that the sentence is somehow incorrect or illegal. This claim is not excepted from the time bar by virtue of the statute." *Id.* at 1257 (¶11) (emphasis added). So, too, Taylor's sentence clearly has *not* expired. Rather, Taylor is claiming that his *un*expired sentence is illegal.

¶23.    Prior to *Howell*, we could have considered the legality of Taylor's sentence under the so-called "fundamental-rights exception" to the statute of limitations. *See Howell*, 358 So. 3d at 615 (¶¶7-8). However, *Howell* expressly "overrule[d]" "any . . . case in which the Mississippi Supreme Court ha[d] held that the courts of Mississippi can apply the judicially crafted fundamental-rights exception to constitutional, substantive enactments of the Legislature such as the [UPCCRA's] three-year statute of limitations." *Id.* at 615 (¶8). Contrary to the dissent's arguments, *Howell* specifically held that a claim alleging an "illegal

and sentences." Miss. Code Ann. § 99-39-3(1) (Rev. 2020). The UPCCRA "abolishes the common law writs relating to post-conviction collateral relief, including by way of illustration but not limitation, error coram nobis, error coram vobis, and post-conviction habeas corpus, as well as statutory post-conviction habeas corpus." *Id.*

11

sentence" is *not* excepted from the UPCCRA's statute of limitations. *Id.* at 615 (¶¶7-8).[7]

Therefore, the circuit court correctly found that Taylor's PCR motion is barred by the statute of limitations.[8]

¶24. **AFFIRMED.**

**WEDDLE AND ST. PÉ, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE**

---

[7] The dissent's reliance on *Hathorne v. State*, 376 So. 3d 1209 (Miss. 2023), is also misplaced. The *Hathorne* Court specifically emphasized that Hathorne's claim was *not* barred by the statute of limitations, stating: "First, *and perhaps most weighty*, this is Hathorne's first PCR motion, *and it was timely filed*." *Id.* at 1214 (¶18) (emphasis added). Moreover, *Hathorne* reaffirmed that a claim alleging an "illegal sentence" is barred by the UPCCRA's statute of limitations "even if the claim [is] meritorious." *Id.* at 1213-14 (¶15) (citing *Howell*, 358 So. 3d at 617).

[8] We also note that the dissent mischaracterizes the underlying issue in this case as a mere "error in paperwork." *Post* at ¶61. As described above, although Taylor's sentence exceeded the statutory maximum for the charge to which he pled guilty, Taylor bargained for that sentence and obtained substantial benefits from the bargain—namely, the State agreed to dismiss the remaining charges in the indictment and drop or not pursue charges related to a string of pharmacy burglaries in several other counties. Under these circumstances, even if we could address the merits of this issue, it is not entirely clear that Taylor would be entitled to relief. In *Shies v. State*, 185 So. 3d 1081 (Miss. Ct. App. 2016), the petitioner, Shies, had been indicted for four counts of credit card fraud as a violent habitual offender, thus subjecting him to the possibility of four life sentences. *Id.* at 1083 (¶4). Shies ultimately pled guilty to two counts of credit card fraud as a nonviolent habitual offender, and the two remaining counts were dismissed. *Id.* Pursuant to Shies's plea agreement, the circuit court imposed consecutive five-year sentences. *Id.* at (¶5). More than ten years later, Shies filed a PCR motion, arguing that his sentences were "illegal" because the maximum sentence for credit card fraud was only three years. *Id.* at 1084-85 (¶¶6, 10-11). This Court agreed with Shies that his sentences were illegal, but we held that he was not entitled to relief because he benefitted substantially from the plea bargain—two counts had been dismissed, and he avoided being sentenced as a violent habitual offender. *Id.* at 1083, 1085-86 (¶¶3, 10-14).

Likewise, in this case, even if we could address the merits of Taylor's claim, we would have to consider that he obtained substantial benefits from his plea bargain. We do not address this issue because *Howell* makes clear that the UPCCRA's statute of limitations bars its consideration. We simply note the issue and our prior decision in *Shies*.

12

**J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY EMFINGER, WEDDLE AND ST. PÉ, JJ.; WESTBROOKS AND McCARTY, JJ., JOIN IN PART. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., CARLTON, P.J., WESTBROOKS AND McDONALD, JJ.**

**LAWRENCE, J., CONCURRING IN PART AND IN RESULT:**

¶25.    I concur with the lead opinion because this Court is duty-bound to follow the supreme court precedent set forth in *Howell v. State*, 358 So. 3d 613 (Miss. 2023). *See Rivera-Guadiana v. State*, 71 So. 3d 1221, 1223 (¶14) (Miss. Ct. App. 2011); *Cahn v. Copac Inc.*, 198 So. 3d 347, 358 (¶35) (Miss. Ct. App. 2015). However, I disagree with the decision that Taylor could have entered into a plea bargain to receive a sentence exceeding the maximum sentence by law. I write to express my belief that this Court should be recognized as having the inherent power—as an error-correction court—to fix the problem presented in this appeal. Make no mistake about it: Taylor sits in jail, illegally held, because a judicially crafted order incorrectly provided for a fifteen-year term when five years was the statutorily mandated maximum sentence. The judicial branch created the illegal order, and this Court should have the inherent authority to correct that order. Courts lacking the ability to correct illegal and erroneous orders stands contrary to the foundational and fundamental aspect of what the courts do and stand for. It should not require grace from the Legislature for the judiciary to fix a judiciary problem.

¶26.    The conundrum in this case began with the Legislature modifying the common law as it existed prior to passing the Uniform Post-Conviction Collateral Relief Act (PCR statute in 1984), Miss. Code Ann. §§ 99-39-1 to -29 (Rev. 2020). The PCR statute stated that

common law writs previously used to seek legal redress of constitutional or statutory errors were abolished. Miss. Code Ann. § 99-39-3. The PCR statute specifically abolished "common law writs relating to post-conviction collateral relief," the "writ of error coram nobis," and "habeas corpus."[9] *Id.*

¶27. In 2023, the Mississippi Supreme Court held that the PCR statute was substantive law (not procedural law) and overruled prior caselaw that created a "judicially crafted fundamental-rights exception" for serious errors not included within the language of the statute. *Howell*, 358 So. 3d at 615 (¶7). Prior to *Howell*, this Court had the authority to fix the injustice presented in this appeal. *See Rowland v. State*, 98 So. 3d 1032 (Miss. 2012). After *Howell*, there is no longer an exception to the three-year time-bar for errors affecting fundamental constitutional rights. *Howell*, 358 So. 3d at 615 (¶7).

¶28. As the dissent correctly points out, *Howell* left open a limited avenue to fix this type of injustice when the Supreme Court stated, "We acknowledge that other arguments may be used to attack the constitutionality of the statutory bars, either as applied to particular cases or on their face, and we have no intent to address their validity one way or the other here. **We further recognize that, in specific cases, other arguments or doctrines, e.g., equitable tolling, might be available to afford relief from the statute of limitations**." *Id.* at 616 (¶12) (emphasis added). Since *Howell*, no cases have further defined what "might be

---

[9] Had the Legislature not abolished habeas corpus relief, Taylor would have a legal avenue to seek redress for his illegal-sentence claim.

14

available to afford relief from the statute of limitations."[10]  *Id.*

¶29.    The clear law of this State requires judges to follow the law when sentencing an individual for violating a statute.  *Vaughn v. State*, 964 So. 2d 509, 510 (¶8) (Miss. Ct. App. 2006).  Here, while not intentional, that did not happen.  The statute mandated a **maximum** sentence of up to **five years**, yet Taylor was sentenced to serve **fifteen years.**  He still sits in jail long past the Legislature's five-year maximum.   Taylor's detention directly contravenes fundamental constitutional protections, including: (1) the Thirteenth Amendment of the United States Constitution and Article 3, section 15 of the Mississippi Constitution's

---

[10]   The lead and dissenting opinions discuss and, may I say, are seemingly correct in their analysis of *Hathorne v. State*, 376 So. 3d 1209 (Miss. 2023).  In my opinion, it is no fault of theirs that they each read *Hathorne* differently.  It is due to the manner in which the Mississippi Supreme Court commented on the *Howell* case in *Hathorne*, 376 So. 3d at 1214 (¶15).  The supreme court cited in *Hathorne* that "Howell's [illegal sentence] challenge did not stand on the merits and, **even if the claim was meritorious, the statutory limitations precluded relief.**"  *Id.* (emphasis added).  That explains why the lead opinion interpreted it the way they did.  Yet, in another paragraph in the same opinion, the supreme court reversed and rendered Hathorne's conviction due to a defective indictment charging a crime for possessing an illegal substance not in the statute, stating:

> To hold otherwise in this case would preclude relief from a person, who we have determined was never charged with a crime, serving twenty years in prison, day-for-day. **Granting relief in this *extraordinary case* is the only just outcome—to keep Hathorne in prison under no legal requirement would certainly constitute "cruel or unusual punishment"** and an "excessive fine[]," which is expressly prohibited under our Constitution.

*Id.* at 1215 (¶20) (citing Miss. Const. art. 3, § 28).  The court appears to hold that keeping Hathorne in jail on a "never charged" crime would justify relief in the interest of justice, but keeping Howell in jail on an "illegal sentence" would be "precluded" by the three-year time-bar.  *Hathorne* does not answer how anyone being held in jail under an obviously illegal sentence (whether for the failure to allege a crime, as in *Hathorne*, or sentencing someone to more time than the law allows, as here) can ever be justified by a court required to correct errors or a court of justice.  Under both circumstances, I am positive the person illegally detained in prison would claim his case was "***extraordinary***."  *See id.* (emphasis added).

15

prohibition against involuntary servitude; (2) the United States Constitution's Fifth and Fourteenth Amendments and Article 3, section 14 of the Mississippi Constitution's guarantee that a person shall not be deprived of life, liberty, or property without due process of law; (3) the United States Constitution's Eighth Amendment and Article 3, section 28 of the Mississippi Constitution's prohibition against cruel and unusual punishment and excessive fines; and (4) Article 3, section 24 of the Mississippi Constitution's guarantees that "right and justice shall be administered without sale, denial, or delay."

¶30.   Why does this Court affirm the trial court's denial of Taylor's requested relief when it is obvious he is being held on an illegal sentencing order?  First, this Court must follow supreme court caselaw and cannot modify supreme court precedent.  *See Rivera-Guadiana*, 71 So. 3d at 1223 (¶14); *Cahn*, 198 So. 3d at 358 (¶35).  Second, this Court can modify its own precedent but must not render decisions contrary to Supreme Court precedent.  *See Rosebur v. State*, 214 So. 3d 307, 311 (¶16) (Miss. Ct. App. 2017).  Third, the Legislature abolished the legal avenues for PCR under the common law, which used to allow those like Taylor to seek judicial redress.  Fourth, the supreme court overruled the judicially crafted fundamental-rights exception to the language of the PCR statute in *Howell*, 358 So. 3d at 615 (¶7).  And in the more recent supreme court opinion, *Hathorne*, the supreme court seems to suggest illegal sentences are, in fact, precluded from being remedied if not filed within three years as set forth in the PCR statute.  *Howell* also included language that there are "**other arguments or doctrines**" that "might be available to afford relief from the statute of limitations."  *Howell*, 358 So. 3d at 616 (¶12) (emphasis added).  *Hathorne* included

16

language that "**[g]ranting relief in this extraordinary case is the only just outcome**—to keep Hathorne in prison under no legal requirement would certainly constitute cruel or unusual punishment." *Hathorne*, 376 So. 3d at 1215 (¶20) (emphasis added). The language in both of those cases could be interpreted as allowing this Court to create an exception to the PCR statute's three-year time limit but would, in my opinion, modify *Howell*, which we are neither allowed nor authorized to do. The supreme court would have to do so.

¶31. Knowing that Taylor is being held in his continuing illegal and unconstitutional detention each day because of a trial court's ruling violates the laws of this state and of the United States, yet this Court is forced to wonder what the supreme court meant in *Howell* when stating that other remedies "might be available." *Howell*, 358 So. 3d at 616 (¶12). While this Court has been classified as a court of error-correction, because of *Howell*, we are forced to ask: can we correct an obvious legal error in a court order when the PCR motion was filed past the three-year time-bar?[11] The question may be better phrased: does this Court maintain the inherent power to correct a judiciary-created erroneous error?

¶32. The Mississippi Supreme Court has recognized inherent powers of courts to act[12] and

---

[11] This Court is an "error-correction court[.]" *Bell v. State*, 168 So. 3d 1151, 1155-56 (¶22) (Miss. Ct. App. 2014).

[12] The supreme court has stated "that a court possesses certain inherent powers [that are] derived from the common law." *Yazoo & M.V.R. Co. v. Scott*, 108 Miss. 871, 67 So. 491, 494 (1915); *see also Lewis v. Hinds Cnty. Circuit Court*, 158 So. 3d 1117, 1125 (¶ 27) (Miss. 2015) ("We hold that courts have inherent power over their courtrooms . . . ."); *Newell v. State*, 308 So. 2d 71, 76 (Miss. 1975) (The judiciary system has the "inherent power . . . to promulgate procedural rules emanat[ing] from the fundamental constitutional concept of the separation of powers and the vesting of judicial powers in the courts." (quoting *Matthews v. State*, 288 So. 2d 714 (Miss. 1974); *Gulf Coast Drilling & Exploration Co. v. Permenter*, 214 So. 2d 601 (Miss. 1968); *S. Pac. Lbr. Co. v. Reynolds*, 206 So. 2d 334

has authoritatively stated that "[a]ll courts recognize the benefit of stability through the law, but acknowledge that it should be permitted growth without stagnation **when justice requires**, hopefully without grievous error." *Newell v. State*, 308 So. 2d 71, 76 (Miss. 1975) (emphasis added). Further, the Supreme Court has properly recognized it can "draw upon its **inherent power** to prescribe rules of procedure to facilitate the administration of justice in the courts throughout the state." *Id.* at 78 (emphasis added). At a minimum, there should be an inherent procedural rule or power recognized to allow a court to correct an obvious legal error that, if uncorrected, would continue the illegal detention of a fellow citizen. In addition, the PCR statute could be easily interpreted as stating that relief from an obviously illegal sentence in an obviously erroneous judicial order is within the meaning of "other arguments or doctrines . . . available to afford relief." *Howell*, 358 So. 3d at 616 (¶12). The Mississippi Supreme Court has not yet held that view.

¶33.    I do not believe the Legislature can strip this Court of its inherent power to correct an obviously illegal order providing for an obviously illegal sentence. Until the supreme court affirms such an inherent power to correct an illegal sentencing completely contrary to the law, this error-correction Court's hands are tied. We are forced to accept an unjust result in a legal world where results such as this could easily be fixed by simply being told we have the authority to do what we were designed to do—correct an illegal result.

---

(Miss. 1968)); *Macvaugh v. State*, 385 So. 3d 443, 451 (¶16) (Miss. Ct. App. 2023) (stating that the supreme court has recognized "courts have an inherent power to protect the integrity of their processes" and may therefore impose sanctions even "where there is no specific statutory authority" stating such (quoting *Est. of McLemore v. McLemore*, 63 So. 3d 468, 487 (¶53) (Miss. 2011))), *cert. denied* 387 So. 3d 62 (Miss. 2024).

18

**EMFINGER, WEDDLE AND ST. PÉ, JJ., JOIN THIS OPINION. WESTBROOKS AND McCARTY, JJ., JOIN THIS OPINION IN PART.**

**McCARTY, J., DISSENTING:**

¶34. The lead opinion is correct when it concludes "it is apparent that Taylor's fifteen-year sentence exceeds the five-year maximum sentence for the crime to which he pled guilty." Nonetheless, it concludes that Taylor is time-barred from attacking this illegal sentence because he did not raise this challenge within three years of his conviction.

¶35. Because the PCR statute *expressly* allows an out-of-time challenge in a situation where a sentence has expired, I respectfully dissent. All Mississippians have the right to be free from cruel and unusual punishment, and to incarcerate Taylor beyond the time authorized by law infringes upon that fundamental right.

¶36. Under clear precedent and authorization from the Supreme Court, we have the inherent authority to vacate the illegal sentence and remand for sentencing within the confines of statutes. We cannot approve such a sentence, as the trial court exceeded its jurisdiction and violated the separation of powers by confining the defendant to a term of years beyond that authorized by the Legislature.

¶37. As a matter of law, it is without debate that confining Marcus Taylor to a term of years beyond that authorized by statute is an illegal sentence. This violates both our federal and state constitutions. "The right to be free from an illegal sentence has been found to be *fundamental*." *Sneed v. State*, 722 So. 2d 1255, 1257 (¶11) (Miss. 1998) (emphasis added).

¶38. That decision cited a federal court which grandly proclaimed: "This court recognizes that the Constitution of the United States protects the accused, in this free land, from being

19

imprisoned unjustly, in its pronouncement in Article VIII" that "Excessive Bail Shall Not Be Required, Or Excessive Fines Imposed, Nor Cruel Or Unusual Punishments Inflicted." *United States v. Sine*, 461 F. Supp. 565, 568 (D.S.C. 1978). For "[t]he right not to suffer an excessive sentence, are the fundamental rights *which the states must protect* in respect to the extent provided by the Eighth Amendment." *Id*. (emphasis added).

¶39. Our own Constitution of 1890 contains a parallel and equally powerful guarantee—that "Cruel or unusual punishment shall not be inflicted, nor excessive fines be imposed." Miss. Const. art. 3, § 28.

¶40. This right is clear. The question then is how does Taylor raise such a claim. Here is where we get tangled in red tape.

¶41. The Legislature established the PCR statute to specifically govern 10 situations that might grant relief to "[a]ny person sentenced by a court of record of the State of Mississippi" for a crime. Miss. Code Ann. § 99-39-5 (Rev. 2020). If a petitioner, like Marcus Taylor, was convicted of a crime but serving a penalty in excess of that authorized by the Legislature, *five* of those ten situations might provide him access to the court system to correct the problem:

> That the conviction or the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of Mississippi;
>
> That the trial court was without jurisdiction to impose sentence;
> . . . .
> That the sentence exceeds the maximum authorized by law;
> . . . .
> That his sentence has expired; his probation, parole or conditional release unlawfully revoked; or he is otherwise unlawfully held in custody; [or]
> . . . .
> That the conviction or sentence is otherwise subject to collateral attack upon any grounds of alleged error heretofore available under any common law,

20

statutory or other writ, motion, petition, proceeding or remedy.

Miss. Code Ann. § 99-39-5(1)(a), (b), (d), (h), and (j).

¶42. So if Taylor had filed his PCR petition within the statute of limitations, there would have been ample ways his illegal sentence could have been addressed. But because he did not, and since "[a] motion for relief under this article shall be made within three (3) years" of either the guilty plea or affirmance or when the "sentence has expired," he forfeited some avenues of relief. *Id*.

¶43. But there are crucial caveats to the statute as expressly granted by the Legislature. One of the types of claims "[e]xcepted from this three-year statute of limitations are those cases in which the petitioner . . . claims that his sentence *has expired*[.]" Miss. Code Ann. § 99-39-5(2)(b) (emphasis added).[13]

¶44. Our Court "always starts statutory interpretation by looking at the plain language of the statute." *Lawson v. Honeywell Int'l Inc.*, 75 So. 3d 1024, 1027 n.4 (Miss. 2011). We also consider "the statute's historical background, its subject matter, and the purposes and objects to be accomplished." *Bell v. State*, 160 So. 3d 188, 193 (¶14) (Miss. 2015).

¶45. To the extent we need to interpret the word "expire," the word simply means "to be no longer legally effective." *Expire*, Black's Law Dictionary 725 (11th ed. 2019). In the

---

[13] Also excepted from the time-bar are claims based on "'an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence;' new evidence that was 'not reasonably discoverable at the time of trial;' [and] 'biological evidence not tested' or subject to new 'DNA testing' that would have impacted the conviction or sentence." *Bell v. State*, 378 So. 3d 420, 421 (¶4) (Miss. Ct. App. 2023) (quoting Miss. Code Ann. § 99-39-5(2)(a)-(b)).

context of section 99-39-5, a sentencing expiration date is connected to the duration of the sentence a petitioner is serving. And it is clear from the purpose of the statute that the Legislature was keeping the gate open to certain claims like the one Taylor makes today.

¶46. As pointed out in the lead opinion, the maximum *lawful* sentence Taylor could serve pursuant to his conviction for conspiracy to sell a schedule III drug *is only 5 years*. Therefore, it is clear that Taylor is currently being illegally detained *beyond* the expiration of the only lawful sentence he could have "bargained for" in his plea: 5 years. Since the PCR statute expressly allows a collateral attack on a sentence that "has expired," we are empowered with the statutory authority to review his claim.

¶47. Indeed, this is not the first time our courts have reviewed and reversed illegal sentences like the one before us. For instance, in one case from our Supreme Court, a defendant raised "that the trial court erroneously imposed a ten-year sentence for shooting into a vehicle, when the statutory maximum is five years." *Foreman v. State*, 51 So. 3d 957, 961 (¶11) (Miss. 2011). The Court wasted little ink on the problem: "Foreman's ten-year sentence is illegal, as it is not within the bounds" of the statute. *Id*. at 962 (¶12). "And we have recognized that a defendant has a fundamental right to a legal sentence." *Id*. The Court immediately vacated the illegal sentence and remanded for sentencing within the statute's range. *Id*. at (¶13).

¶48. Before then, the Court held that the appellate courts also had the inherent authority to "resentence a convicted defendant without remanding to the trial court in cases where the error is caused by a misapplication of a sentencing statute." *Sweat v. State*, 912 So. 2d 458,

460 (¶7) (Miss. 2005). We have authority to resentence since "it is a waste of judicial resources because it would be a rote resentencing." *Id*. at 461 (¶8). This authority is in accord with the broader doctrine that "generally, where a convicted defendant receives an illegal sentence, the sentence must be vacated and the case remanded to the trial court for resentencing because the defendant suffered prejudice." *Id*. at (¶9).

¶49. The lead opinion relies on *Sneed* to conclude that Taylor's sentence has not expired. *Sneed*, 722 So. 2d at 1256. But there are stark differences between that case and today's appeal. First of all, while Sneed *claimed* his sentence had expired, it was a "negotiated sentence" for "burglary as a habitual offender" for "a term of six years without the possibility of parole or reduction in sentence[.]" *Id*. at (¶¶1-2). Sneed was attacking what he argued was an "improper enhancement" as a habitual offender. *Id*. at (¶1). He had also already filed a PCR petition, and the Court found he was "barred from bringing a successive motion." *Id*. at (¶8).

¶50. Furthermore, the Court ascertained that Sneed's six-year sentence was well within the statutory limits—in fact, his too-clever argument was that "because the trial judge deviated from the statute's mandatory sentence of ten years," his sentence was illegal. *Id*. at (¶12). *That* is why the Court declared, "This is obviously not a claim that the sentence has expired. It is a claim that the sentence is somehow incorrect or illegal." *Id*. at 1257 (¶11). Not because such a claim is not *generally* allowed after the time-bar, but because Sneed's *specific* claim was barred.[14]

_____

[14] Frankly, both the lead opinion and this opinion are also constrained by the now-overruled portions of all these cases upon which we heavily rely. The next passage in *Sneed*

23

¶51.     So after a careful review of *Sneed*, we see that it holds absolutely no application to today's case.  Instead, a plain-language reading of the statute allows Taylor to assert a claim that his sentence has expired—a claim that is expressly exempted from the time-bar.

¶52.     In line with the express statutory language excepting certain claims from the time-bar, *Foreman* and *Sweat*, we should vacate Taylor's sentence.  Since his confinement has already exceeded that authorized by the Legislature, we must order his immediate release.  Such result accords with the express statutory language that provides a path to relief for those unlawfully incarcerated.

\* \* \* \*

¶53.     Even though we should proceed to the merits of Taylor's claim and order his release from an illegal sentence, the lead opinion perceives that Taylor's claim is time-barred because it does not fit within one of the statutory exceptions.  Even if it were barred, there is a pathway to review.

¶54.     We must follow the Supreme Court's holding that there is no longer a wide-open "fundamental rights exception," as this was expressly abolished to honor the Legislature's time limit applicable to PCR requests.  *See generally Howell v. State*, 358 So. 3d 613, 615 (Miss. 2023).  Yet contained in *Howell* is an important caveat—paragraph 12—which recognized there might be limitations on an *absolute* application of the time-bar.  "We

---

assured that the Courts would still act to safeguard constitutional rights: "This Court has carved an exception to these procedural bars, however, where it found it necessary to protect fundamental rights. The right to be free from an illegal sentence has been found to be fundamental." *Sneed*, 722 So. 2d at 1257 (¶11).  Of course, the Court later overruled this judicially crafted exception to the time-bar in *Rowland*, which is why a return to a faithful reading of the statute is so imperative.

acknowledge that other arguments may be used to attack the constitutionality of the statutory bars, either as applied to particular cases or on their face," and "[w]e further recognize that, in specific cases, other arguments or doctrines, e.g., equitable tolling, might be available to afford relief from the statute of limitations." *Id*.

¶55. It was "paragraph 12" the Court used as a fulcrum for reversing and rendering a conviction burdening the PCR petitioner who claimed to be illegally held. Kelton Hathorne contended his indictment for possession of "ethylone" "was defective and did not charge a crime," and "urge[d] th[e Supreme] Court to find that actual innocence claims survive *Howell* and constitute an exception to the statutory time bar under the UPCCRA." *Hathorne v. State*, 376 So. 3d 1209, 1211 (¶6) (Miss. 2023). The facts were certainly unique—for both the Court of Appeals and the Supreme Court agreed that Hathorne's indictment had not charged him with a crime as defined by the Legislature. *Id*. at 1212 (¶10).

¶56. The Supreme Court reviewed *Howell* and pointed out that in paragraph 12 it had "left open the door for other challenges that are not substantive in nature," and without elaboration, determined that it would then "turn to the facts of this case utilizing that approach." *Id*. at 1214 (¶15). Ultimately, it determined that Hathorne's defective indictment could not be waived through inaction or action, since it was "a nullity, and may be objected to at any time." *Id*. at 1215 (¶19).

¶57. Crucially, the Court held:

> To hold otherwise in this case would preclude relief from a person, who we have determined was never charged with a crime, serving twenty years in prison, day-for-day. Granting relief in this extraordinary case is the only just outcome—to keep Hathorne in prison *under no legal requirement* would

25

> certainly constitute "cruel or unusual punishment" and an "excessive fine[]," which is expressly prohibited under our Constitution. Miss. Const. art. 3, § 28.

*Id.* at (¶20) (emphasis added). Accordingly, the Court reversed and rendered the conviction. *Id.* at (¶21).

¶58. Although the Court found that Hathorne's claim was not time-barred, *id.* at 1211 (¶7), as the lead opinion does in this case, its ultimate conclusion provides an alternate path of relief for Taylor. Just as in *Hathorne*, we have learned that Marcus Taylor is held in prison under no legal requirement. It was not a defective indictment that led to his excessive and illegal sentence, but a mistake of math—one shared by the trial court, prosecutor, and defense counsel, until such time as this appeal was pending.

¶59. But that mistake results in the same harm today that the Court perceived of in *Hathorne*. To use the language of that unanimous decision, "to keep [Taylor] in prison under no legal requirement would certainly constitute 'cruel or unusual punishment' and an 'excessive fine[],' which is expressly prohibited under our Constitution." *Id.*; *see* Miss. Const. art. 3, § 28. Even if we do conclude the time-bar applies in this matter, the error in this case is of the same magnitude as the one in *Hathorne*. Just as the Supreme Court corrected the error in that case, so we must in this one.

¶60. As an additional consideration, the trial court exceeded the limits of its jurisdiction by sentencing him to confinement beyond the years set by the Legislature as punishment. "[D]efining crimes and prescribing punishments are *exclusively* legislative functions as a matter of constitutional law." *Parker v. State*, 119 So. 3d 987, 998 (¶25) (Miss. 2013) (emphasis added). While perhaps inadvertently, the trial court's pronouncement of a

sentence of 15 years for conspiracy to sell a schedule III controlled substance—ten years more than the maximum penalty set by the Legislature—infringes upon the prerogative of the Legislature and must be voided. "[W]e must take the legislative language as we have been given it, not as we wish it were," since "subject only to constitutional limitations, the legislative branch of government holds the exclusive power to provide punishments for crimes." *Pittman v. State*, 570 So. 2d 1205, 1206 (Miss. 1990).

¶61. Ultimately, our Judiciary should not close the door on claims a person is serving an illegal sentence—especially one that deprives a man of freedom due to little more than an error in paperwork.[15] If laws damage those constitutional freedoms, then they must fall in the face of the superior right. For there is a "principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void; and that courts, as well as other departments, are bound by that instrument." *Marbury v. Madison*, 5 U.S. 137, 180 (1803).

¶62. For these reasons, I believe we must reverse the order denying PCR and render judgment as to the illegal sentence confining Marcus Taylor, as any lawful sentence has long expired.

**BARNES, C.J., CARLTON, P.J., WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**

---

[15] Long before the adoption of the PCR statutes, we even had adopted rules to address these exact types of slip-ups. If a petitioner believed he was serving an unlawful sentence, he could file "a simple motion to vacate, set aside, or correct the judgment and grant a new trial," which was often called a writ of error coram nobis. *Windom v. State*, 192 So. 2d 689, 691 (Miss. 1966). But the writ of error coram nobis was absorbed into the PCR statute. Miss. Code Ann. § 99-39-3 (Rev. 2020). Yet it cannot be true that Mississippians in 1966 enjoyed greater protections of their freedoms than those living today.